**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| TRISH LEE McCLOUD, by and through her legal guardian, Candy L. Hall, et.al, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **Case No.: 04-1118**<br>Division: Peoria |
| GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD. and THE GOODYEAR TIRE & RUBBER COMPANY, ) ) ) ) | |
| Defendants. ) ------------------------------ ) ) | Consolidated with |
| WILLIAM BOOKER, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 04-1159<br>Division: Peoria |
| GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD. and THE GOODYEAR TIRE & RUBBER COMPANY, ) ) ) ) | |
| Defendants. ) | |

# ORDER

Before the Court is Defendant Goodyear Tire & Rubber Company's ("Goodyear") Motion for Summary Judgment [Doc. #154]; Plaintiff, Trish Lee McCloud's ("McCloud") Suggestions in Opposition [Doc. #161]; Goodyear's Reply in Support of its Motion [Doc. #164]; and McCloud's Response to Defendants' Reply [Doc. #185]. For the reasons that follow, Goodyear's Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

I.
**Background**

The following facts are undisputed. On or about May 26, 2002, driver William Booker ("Booker") and passenger McCloud, were traveling on Booker's 1985 Honda Goldwing motorcycle, going northbound on Interstate 55 in Livingston County, Illinois, when an allegedly defective rear tire "suddenly and catastrophically deflated," resulting in personal injuries to both McCloud and Booker. As a result, on April 21, 2004, McCloud filed claims for strict liability and negligence against both Goodyear and Goodyear Dunlop Tires North America, Ltd. ("Dunlop"), alleging that the rear tire of the motorcycle -- which was a Dunlop Qualifier K6278150/90B15M/C74H DOT. No. DAWVM711200 -- was defective and unreasonably dangerous in design and manufacture. Likewise, on May 18, 2004, Booker also filed a complaint against Goodyear and Dunlop alleging the same claims as McCloud.

In turn, Goodyear has filed the instant Motion for Summary Judgment, alleging that it was not involved in the design, manufacture, assembly, advertising, selling, or distribution of the subject tire in this case. See [Doc. #154, pg. 5].

II.
**Legal Standard**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); see also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2nd 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not

3

lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

### III.
### Analysis

The Court first points out the there is a dispute between the parties as to which legal theory should apply in assessing Goodyear's liability in the underlying action. McCloud argues that Goodyear should be liable for any defects regarding the tire in question, because Goodyear *held itself out* to the public and its investors as controlling the manufacturing processes and sales at the Tonawanda plant in New York -- where the subject tire was manufactured. See Aebischer v. Stryker Corp., No. 05-2121, 2006 U.S. Dist. LEXIS 1619; 2006 WL 44307 (C.D. Ill. Jan. 9, 2006) (applying the "holding out theory"). Goodyear, on the other hand, argues that Aebischer does not apply to the instant matter but, instead, the Van Dorn test should apply because McCloud is attempting to pierce the corporate veil.

A review of McCloud's complaint against Goodyear reveals a factual basis to analyze Goodyear's liability under both the "holding out" theory and the Van Dorn test. In her Complaint, McCloud asserts both strict liability and negligence theories of recovery against Goodyear. Both theories of recovery, however, have different applicable legal standards. See Bittler v. White and Co., Inc., 560 N.E.2d 979, 982 (Ill. App. Ct. 1990).

In cases where a plaintiff attempts to hold a parent company liable for the acts of its subsidiary under a negligence theory, the plaintiff must establish that either one corporation was the mere instrumentality of the other, or that one corporation was simply a dummy or sham and that failing to impose liability would justify a wrong or perpetuate a fraud. See Main Bank of Chicago v. Baker, 427 N.E.2d 94, 101 (Ill. 1981). This standard was later named the "Van Dorn" test, after the Seventh Circuit adopted this approach in Van Dorn Co. v Future Chemical & Oil Co., 753 F.2d 565 (7th Cir. 1985). In Baker, the Illinois Supreme Court explained that:

> [B]efore the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. Id. at 101.

In support of their contention that the Van Dorn test should not apply, McCloud relies on Chief District Judge Michael

P. McCuskey's recent decision in Aebischer v. Stryker Corp., No. 05-2121, 2006 U.S. Dist. LEXIS 1619 (C.D. Ill. Jan. 9, 2006). Aebischer came before the Court on a Motion to Amend the Complaint in which the Plaintiff sought to file an amended complaint which alleged that a Defendant held itself out as the manufacturer of an allegedly defective replacement hip, a typical product liability claim. The Court noted that a party holding itself out formed a basis for product liability claims (as discussed below) and allowed the filing of the Amended Complaint, denied Defendant's Motion for Summary Judgment and allowed further discovery. See, Aebischer v. Stryker Corp. 2006 WL 2038545 (C.D.Ill. Jul 19 2006) (considering a later motion to compel). The Court did not perform any analysis regarding the negligence claim. Furthermore, the Court did not hold that the Van Dorn test was not the correct measure for whether a plaintiff should be able to pierce the corporate veil of a parent corporation in a negligence claim. Therefore, Aebischer is distinguishable with regard to Plaintiff's negligence claim.

Since one of McCloud's claims seeks to impose negligent liability upon Goodyear as a parent corporation for negligence committed by, the subsidiary - Dunlop, the Van Dorn test applies to McCloud's negligence claims. However, in regard to McCloud's strict liability claims, the "holding out" theory is the correct standard to be applied. See Connelly v. Uniroyal, Inc., 389 N.E.2d 155 (Ill. 1979); see Also, Hebel v. Sherman Equipment,

442 N.E.2d 199 (Ill. 1982). In all the Illinois cases in which a court has applied the "holding out" theory, the plaintiff was proceeding against the defendant based on a products liability/strict liability claim. See Ogg v. City of Springfield, 458 N.E.2d 1331 (Ill. App. Ct. 1984); see also, Root v. JH Industries, Inc., 660 N.E.2d 195 (Ill. App. Ct. 1995); Hebel, 442 N.E.2d 199; Connelly, 370 N.E.2d 1189. Accordingly, the Court will first address Goodyear's liability as to Plaintiffs' negligence claim under the Van Dorn test, and then Goodyear's liability as to McCloud's strict liability claims under the "holding out" theory.

A. The "Van Dorn" Test

In cases where a plaintiff has attempted to hold a parent company liable for the acts of its subsidiary for negligence, courts have repeatedly applied the Van Dorn test. See Connelly, 370 N.E.2d at 1196; Sea-Land Services, Inc. v. Pepper Source, 941 F.2d 519 (7th Cir. 1991); Torco Oil Co. v. Innovative Thermal Corp., 763 F.Supp. 1445 (N.D.Ill. 1991); See also, Van Dorn, 753 F.2d at 569, 570. In Van Dorn, the Seventh Circuit held that generally:

> "[u]nder Illinois law, a corporation is a legal entity separate and distinct from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated. However, a corporate entity will be disregarded and the veil of limited liability pierced when two requirements are met: First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual

>    [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice."

Id. at 569, 570 (citations omitted).

1. Unity of Interest

"Stock control and the existence of common officers and directors are generally prerequisites to the piercing of the corporate veil although these factors alone will not suffice." Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1389 (7th Cir. 1994)(citations omitted).  This is because, "[t]heoretically, every parent corporation, by virtue of its ownership interest, has the power, right, and ability to control the products of its subsidiary."  Bunch v. Centeon, L.L.C., No. 99-C3511, 2000 U.S. Dist. LEXIS 17144, at *6 (N.D. Ill. Nov. 24, 2000).  Therefore, "to hold a parent company liable for acts by a subsidiary, the legal separateness of the parent and subsidiary must have been disregarded in a wide range of matters."  Bunch, 2000 U.S. Dist. LEXIS 17144, at *6.

In determining whether the requisite degree of control is maintained by one corporation over the affairs of another to justify disregarding their separate corporate identities, the Illinois courts have considered some of the following factors: "(1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation

8

treating the assets of another corporation as its own." Van Dorn, 753 F.2d at 570. Some more factors that have also been considered include: Who controlled the day-to-day operations, manufacturing and design processes, did the two corporations share the same employees, who controlled payroll, and, did the two corporations have separate facilities? Id. at 572; See also, Hystro Products, Inc., 18 F.3d at 1389.

In considering the first four factors as applied to the case at hand, it is unclear from the record whether Dunlop failed to maintain adequate corporate records or comply with corporate formalities, or that Dunlop was even undercapitalized. The record, however, does indicate that Goodyear reported Dunlop's profits and assets as their own. In regards to the other considerations, Plaintiffs' allege that the policies and procedures for the operation of Dunlop's business, including product quality and safety of the tires it manufactures, have been controlled by Goodyear since 1999. However, the record to which Plaintiffs' cite to in support of this contention is merely a business conduct manual, and does not in any way indicate whether Goodyear controls the day-to-day operations, manufacturing, and design processes of Dunlop. Goodyear's financial report only indicates that after they acquired 75% of Dunlop's interest, that in order to maximize market growth opportunities, they effected a plan that included the downsizing or consolidation of manufacturing, sales, support and

9

distribution operations. This definitely suggests that Goodyear controlled the marketing processes, however, there is nothing else in the record that indicates whether they specifically controlled the manufacturing and design processes at Dunlop's Tonawanda Plant on a day-to-day basis. Goodyear's website merely indicates that Dunlop's Tonawanda plant is a part of the Goodyear family of companies which does not suggest that they controlled Dunlop's Tonawanda plant's manufacturing, operation, and design processes.

Goodyear and Dunlop did not share the same employees, and Dunlop even had their own headquarters located in West Amherst, New York. There is nothing in the record to suggest that Goodyear has made a warranty of any kind to any person with respect to the specific tire in question, or even to motorcycle tires period. In fact, Dunlop manufactured the tire in question in their Tonawanda plant, which meant that Goodyear neither manufactured nor was in possession of the tire in question at any time. Accordingly, the Court must find, with respect to Plaintiffs' negligence claims, that despite Goodyear's substantial ownership of Dunlop's stock, these two corporations have always operated as separate entities and continue to do so today. Therefore, the Court finds no basis on which to find that there is unity of interest and ownership that the separate personalities of Goodyear and Dunlop should be disregarded.

2. Fraud or the Promotion of an Injustice

Even if the Court finds Goodyear to have sufficient control over Dunlop, to hold them liable for the negligent acts of Dunlop, the Plaintiffs have still not offered any proof of fraud or that an injustice will result if they are not allowed to also hold Goodyear liable.  The Van Dorn court held that, "[o]nce the first element of the test is established, either the sanctioning of a fraud (intentional wrongdoing) or the promotion of injustice, will satisfy the second element.  Van Dorn, 753 F.2d at 570.  In order to satisfy the second requirement, Plaintiffs' must establish more than the inability to collect on their judgment.  Sea-Land Serv., Inc. v. Pepper Source, 993 F.2d 1309, 1311 (7th Cir. 1993).  Plaintiffs' must establish a "wrong" such as where:

> "the common sense rules of adverse possession would be undermined; former partners would be permitted to skirt the legal rules concerning monetary obligations; a party would be unjustly enriched; a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful."

Id. at 1311, 1312 (quoting Sea-Land Serv., Inc. v. Pepper Source, 941 F.2d 519, 524 (7th Cir. 1991)).

In the present case, Plaintiff, McCloud conceded that she was not able to find any evidence that would show, "that adherence to the fiction of separate corporate existence," in this case, "would sanction a fraud or promote injustice."

11

Citing, Van Dorn, 753 F.2d at 569-70. And since Plaintiff, Booker, failed to respond to this Court's order requesting evidence to satisfy the second prong of the Van Dorn test, this Court concludes that Plaintiffs' have failed to provide evidence from which a reasonable jury could conclude that the second prong of the Van Dorn test has been satisfied. Accordingly, the Court grants Goodyear's motion for summary judgment in part, as it relates to Plaintiffs' negligence claims against Goodyear.

B.  "Holding Out" Theory

Under Illinois law, "the law is clear that a company which holds itself out to the public as the manufacturer of a product is liable for the injuries caused by that product if it is found to be unreasonably dangerous." Ogg, 458 N.E.2d at 1336 (citations omitted). In the past, the aim of the "holding out" theory or "apparent manufacturer" doctrine, was to provide a remedy for consumers injured by unsafe products. Hebel, 442 N.E.2d at 202. This same objective is now "achieved by the doctrine of strict products liability." Id. In other words, "[t]he function of the apparent-manufacturer doctrine has, as it were, been absorbed by the theory of sellers' strict liability in tort for injuries caused by unreasonably unsafe products." Id. The Supreme Court of Illinois has held that:

> "The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the *purchasing public* to believe that it is the actual manufacturer, and to act on this belief-that is, to *purchase the product in reliance* on

>the apparent manufacturer's reputation and skill in making it."

Id. at 203 (emphasis included).

Therefore, "whether a holding out has occurred must be judged from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase." Id. Another rationale which justifies imposing strict liability on manufacturers, "is based on the fact that [the manufacturers], as part of the chain of distribution, are involved in and reap a profit from the placement of the allegedly defective product into the stream of commerce." Bittler, 560 N.E.2d at 981 (citing Hebel, 442 N.E.2d 199). Furthermore,

>"[e]ven parties who are not within the actual chain of distribution, but who play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, are held liable under the doctrine of strict liability."

Id. (citing Connelly, 389 N.E.2d 155).

In the present case, the record definitely shows that Goodyear reports Dunlop's profits as their own, thereby supporting the notion that Goodyear reaps the profits from the tires that Dunlop manufacturers and sells. Whether Goodyear profits from Dunlop's manufacture of motorcycle tires--specifically, the tire in question--is, however, disputable. Thomas Johnson, Jr., the tire performance manager at Dunlop in 2005, stated that he "believed" the motorcycle operations at

13

Dunlop were a separate entity from Goodyear's purchase of Dunlop.

However, a belief is not the same as actual knowledge, and there is nothing in the record that either proves or disproves his statement. It is disputable whether Goodyear plays an integral role in the marketing of the allegedly defective tire. Goodyear took over the marketing of Dunlop, which includes the sale of Dunlop products. However, there is nothing in the record to indicate whether Goodyear also took over the motorcycle division of Dunlop. The record only states that Goodyear acquired 75% of Dunlop's interest, and with it, Dunlop's tire sales and distribution operations. The record does not indicate which tire sales or distribution operations.

Summary judgment should be granted "where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a material question of fact does exist, the Court must not grant summary judgment.

In this case, there are disputable questions of fact as to whether Goodyear was marketing Dunlop's motorcycle operations when they were marketing Dunlop's products. Based upon the evidence before the Court, a reasonable jury could conclude that

Goodyear was marketing Dunlop tires and was holding itself out as the apparent manufacturer of Dunlop motorcycle tires.

Accordingly, this Court must deny Goodyear's Motion for Summary Judgment in part, as it relates to Plaintiffs' strict liability claims.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 154] be GRANTED in part and DENIED in part. Summary Judgment is GRANTED in favor of Defendant on Count III and DENIED as to Counts I and II.

ENTERED this   11th   day of December, 2006.

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge