**E-FILED**
Monday, 23 July, 2007  02:30:07 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT

# - A –

TRISH LEE McCLOUD, by and through )
her legal guardian, Candy L. Hall, et. al., )
                          )
     Plaintiffs,             )
                          )
     v.                     )
                          )
GOODYEAR DUNLOP TIRES NORTH )
AMERICA, LTD. and THE GOODYEAR )
TIRE & RUBBER COMPANY, )
                          )
     Defendants.           )
-------------------------------------------------)
WILLIAM BOOKER, )
                          )
     Plaintiff,            )
                          )
     vs.                   )
                          )
GOODYEAR DUNLOP TIRES NORTH )
AMERICA, LTD. and THE GOODYEAR )
TIRE & RUBBER COMPANY, )
                          )
     Defendants.           )

**COPY**

Case No. 04-1118

Division: Peoria
Judge McDade
Magistrate Judge Gorman

Consolidated with

Case No. 04-1159
Division: Peoria
Judge McDade
Magistrate Judge Gorman

## CERTIFICATE OF SERVICE
## OF DEFENDANT GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.'S
## RESPONSES TO PLAINTIFF TRISH McCLOUD'S FIRST
## INTERROGATORIES

I hereby certify that on June 22, 2005, I electronically filed this Certificate of Service with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel listed on the attached service list.

I hereby certify that on June 22, 2005, I served said Certificate and Defendant Goodyear Dunlop Tires North America, Ltd.'s Responses to Plaintiff Trish McCloud's First Interrogatories by depositing same in the U.S. Mail at 20 North Wacker Drive, Chicago, Illinois 60606.

     s/Edward R. Moor
     Edward R. Moor, ARDC#6205169
     Attorney for Defendants
     The Goodyear Tire & Rubber Company and
     Goodyear Dunlop Tires North America
     WILLIAMS MONTGOMERY & JOHN LTD.
     20 North Wacker Drive, Suite 2100
     Chicago, Illinois 60606
     Telephone: 312-443-3200
     Facsimile: 312-630-8500
     E-mail: erm@willmont.com



EXHIBIT

_A_

McCloud v. Dunlop et al.
Case No. 04-1118 Consolidated with
Booker v. Dunlop et al.
Case No. 04-1159

## SERVICE LIST

### Attorneys for Plaintiff McCloud

Randy W. James, Esq. (Angel)
Mark E. Parrish, Esq.
Lauren E. Perkins, Esq.
JAMES, TOTTA & PARRISH, LLC
218 N.E. Tudor Road
Lee's Summit, Missouri 64086
Ph: 816-554-1500
Fax: 816-554-1616
rjames@jtplaw.com
maparrish@jtplaw.com
lperkins@jtplaw.com

Edward H. Rawles, Esq.
RAWLES, O'BYRNE, STANKO & KEPLEY, P.C.
501 West Church Street
P.O. Box 800
Champaign, Illinois 61824-0800
Phone: (217) 352-7661
Fax: (217) 352-2169
ehrawles@rosklaw.com

Barry R. Conybeare, Esq. (Gail)
CONYBEARE LAW OFFICE, P.C.
519 Main Street
St. Joseph, Michigan 49085
Phone: (269) 983-0561
Fax: (269) 983-5327
barry@conybearelaw.com

### Attorneys for Plaintiff Booker

Michael D. Marrs, Esq.
LAW OFFICE OF MICHAEL D. MARRS, P.C.
5709 Red Arrow Highway
Stevensville, Michigan 49127
Ph: 269-429-6400
Fax: 269-429-6490
mmarrslaw@aol.com

James P. Lawson, Esq.
KINGERY DURREE WAKEMAN & RYAN ASSOCIATES
416 Main Street, Suite 915
Peoria, Illinois 61602
Ph: 309-676-3612
Fax: 309-676-1329

### Attorneys for Third-Party Defendant Booker

Ximen J. Januszyk, Esq.
MAGNANI & BUCK LTD.
321 South Plymouth Court
Suite 1700
Chicago, Illinois 60604
Ph: (312) 294-4800
Fax: (312) 294-4815
xjw@magnanibuck.com
law@magnanibuck.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

TRISH LEE McCLOUD, by and through )
her legal guardian, Candy L. Hall, et. al., )
                                        )
      Plaintiffs, )
                                          )
        v. )        Case No. 04-1118
GOODYEAR DUNLOP TIRES NORTH )   Division: Peoria
AMERICA, LTD. and THE GOODYEAR )
TIRE & RUBBER COMPANY, )
                                          )
      Defendants. )
------------------------------------------------------)  Consolidated with
WILLIAM BOOKER, )

      Plaintiff, )

        v. )        Case No. 04-1159
                                          )   Division: Peoria
GOODYEAR DUNLOP TIRES NORTH )
AMERICA, LTD. and THE GOODYEAR )
TIRE & RUBBER COMPANY, )
                                          )
      Defendants. )

## DEFENDANT GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.'S RESPONSES TO PLAINTIFF TRISH McCLOUD'S FIRST INTERROGATORIES

Defendant GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD. ("DUNLOP") hereby responds to Plaintiff Trish Lee McCloud's First Interrogatories.

## PRELIMINARY STATEMENT

DUNLOP has not fully completed its investigation of the facts relating to this matter, has not fully completed discovery, and has not completed its preparation for trial. All responses contained herein are based only upon the information and documents presently available and specifically known to DUNLOP, and disclose only those contentions that presently occur to DUNLOP.

It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional facts, add meaning to known facts, and establish new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in,

and variations from, the facts and contentions set forth herein.

The following responses are given without prejudice to DUNLOP's right to produce evidence of any subsequently discovered fact or facts that DUNLOP may later recall. DUNLOP accordingly reserves the right to change its responses as additional facts are ascertained, analyses are made, legal research is completed, and contentions are asserted. These responses are made in a good faith effort to supply as much factual information and as much specification of legal contentions as are presently known, but should in no way be to the prejudice of DUNLOP in relation to further discovery, research, or analysis.

Dunlop reserves the right to supplement these responses based on its continuing investigation.

## GENERAL OBJECTIONS

1.      DUNLOP has not completed its investigation of the facts relating to this case. The following responses are made upon information currently available to DUNLOP and without prejudice to DUNLOP's right to use subsequently discovered facts or documents to amplify the meaning of existing facts or documents, all of which may lead to substantial additions to, changes in, and variations from, the responses. Discovery and investigation are continuing.

2.      DUNLOP generally objects to these requests on the grounds, and to the extent, that they seek information or documents protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other lawfully recognized privilege or immunity that may attach.

3.      DUNLOP generally objects to these requests on the grounds, and to the extent, that they attempt or purport to impose obligations beyond those imposed or authorized by the Federal Rules of Civil Procedure or any other applicable law.

4.      DUNLOP generally objects to these requests on the grounds, and to the extent, that they seek information and documents peculiarly within the possession, custody, or control of plaintiff, or seek information or documents equally within plaintiff's possession, custody, or

control.

5.    DUNLOP generally objects to these requests on the grounds, and to the extent, that they use inherently vague and ambiguous terms without clarifying the meaning of those terms in the context of this action. Such terms are subject to numerous reasonable interpretations and DUNLOP objects that it is unfair and improper to require DUNLOP to guess at the intended meanings of those terms.

6.    DUNLOP generally objects to these requests on the grounds, and to the extent, that they seek information or documents protected from disclosure by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

7.    DUNLOP generally objects to the definition of "subject tire" set forth in the "Definitions and Instructions" on the grounds that it:

a.    Defines "subject tire" as a "Dunlop Qualifier K6278150/90B 15M/C74H DOT No. DAWVM711200." DUNLOP is informed and believes that the tire at issue in this lawsuit is a Dunlop Qualifier K627B 150/90B15M/C74H.

b.    Defines "subject tire" as "the actual tire on the rear position of the motorcycle on which Plaintiff was a passenger at the time of the wreck on May 26, 2002." This definition assumes facts that DUNLOP cannot and does not admit to at this time.

DUNLOP will respond to each interrogatory that references the "subject tire" as though the interrogatory is directed to a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200.

8.    DUNLOP generally objects to the definition of "subject model tires" set forth in the "Definitions and Instructions" on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that the definition is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP will respond to each interrogatory that references the "subject model tires" as though the interrogatory is directed to

the Dunlop Qualifier K627B 150/90B15M/C74H tire.

9.     DUNLOP incorporates, as though fully set forth therein, their general objections into each response set forth below.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Please state the date, including the day of the week, and the location at which the subject tire was manufactured.

### RESPONSE TO INTERROGATORY NO. 1:

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states that the subject tire was manufactured during the 12th week of 2000 at the Dunlop plant in Tonawanda, New York.

### INTERROGATORY NO. 2:

Identify each person by name, address, and job designation or job title who participated in the manufacture of the subject tire and whether each such person is still employed by any defendant to this lawsuit.

### RESPONSE TO INTERROGATORY NO. 2:

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories.  In addition, DUNLOP objects to this interrogatory on the grounds that it is unduly burdensome, is overly broad, and seeks information that is neither relevant to the subject matter of this litigation nor

reasonably calculated to lead to relevant or admissible evidence.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states that it has not been able to identify the individual or individuals who participated in the manufacture of the subject tire.

**INTERROGATORY NO. 3:**

Please identify and describe the testing to which the subject tire, and or [*sic*] each of its component parts, was put. Please also state whether the subject tire was inspected by any employee by [*sic*] defendant Dunlop subsequent to its manufacture, and if so, identify the employee and describe the inspection.

**RESPONSE TO INTERROGATORY NO. 3:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states that every cured tire is thoroughly inspected by a trained inspector. DUNLOP has not been able to identify the inspector of the subject tire.

Further, Dunlop refers plaintiff to the testing standards and compliance test results pertaining to Standard No. 119 of the Federal Motor Vehicle Safety Standards. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality.

**INTERROGATORY NO. 4:**

For all documents or information responsive to plaintiff's interrogatories or request for production does defendant Dunlop retain said information indefinitely? If not, describe the policy for destruction of documents and information, provide the rationale for any such policy, and identify any documents or information not subject to the risk of destruction under the policy.

**RESPONSE TO INTERROGATORY NO. 4:**

DUNLOP objects to this interrogatory on the grounds that it is overly broad and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence.

Without waiving its objections, DUNLOP states that it retains all DOT test data for eight years.

**INTERROGATORY NO. 5:**

Identify each separate component in the subject tire (e.g., innerliner, bead, etc.) and identify each product manufactured by defendant Dunlop which contains any component or components identical to any component or components also found in the subject tire, identifying the common component or components for each such product.

**RESPONSE TO INTERROGATORY NO. 5:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that the request is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive

harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP refers plaintiff to the manufacturing specification and design drawing applicable to the subject tire. DUNLOP will produce these materials for the subject tire following the entry of a suitable protective order intended to safeguard their confidentiality.

## INTERROGATORY NO. 6:

Please describe each step of the manufacturing process for the subject tire and any changes to that process with respect to the subject model tires for the 24 month period preceding and following the manufacture of the subject tire.

## RESPONSE TO INTERROGATORY NO. 6:

DUNLOP incorporates its general objections to the definitions of "subject tire" and "subject model tires" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP refers plaintiff to the manufacturing specification and design drawing applicable to the subject tire. DUNLOP also refers plaintiff to the change history for the Dunlop Qualifier K627B 150/90B15M/C74H tire for the years 1999, 2000, and 2001. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality.

**INTERROGATORY NO. 7:**

Was the manufacturing process used for the subject tire the same as the manufacturing process for the subject model tires? If not, explain the differences.

**RESPONSE TO INTERROGATORY NO. 7:**

DUNLOP incorporates its general objections to the definitions of "subject tire" and "subject model tires" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is vague, ambiguous, and overly broad, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, DUNLOP states that the Dunlop Qualifier K627B 150/90B15M/C74H tire was manufactured according to a manufacturing specification that DUNLOP will produce following the entry of a suitable protective order intended to safeguard its confidentiality.

**INTERROGATORY NO. 8:**

If the answer to No. 7 is yes, please describe any quality control measures employed by defendant Dunlop in the manufacture of the subject tire to determine whether it conformed with its design specifications.

**RESPONSE TO INTERROGATORY NO. 8:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further

objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP refers plaintiff to the visual standards manual and to the testing standards and compliance test results for Federal Motor Vehicle Safety Standards No. 119. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality. DUNLOP also refers plaintiff to 49 Code of Federal Regulations Part 571.119.

## INTERROGATORY NO. 9:

Did the subject tire conform with its design specifications? If yes, please describe the design specifications in comparison to the components of the subject tire. If no, in addition to describing the design specifications, also describe how the subject tire did not conform with those specifications.

## RESPONSE TO INTERROGATORY NO. 9:

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP also objects to this interrogatory to the extent that it prematurely seeks information that Rule 26(a)(2) of the Federal Rules of Civil Procedure protects from disclosure at this stage of the litigation. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, and

subject to its understanding of this request, DUNLOP states: Yes. DUNLOP refers plaintiff to the design drawing for the subject tire. DUNLOP will produce this drawing following the entry of a suitable protective order intended to safeguard its confidentiality.

**INTERROGATORY NO. 10:**

At the time of the manufacture of the subject tire, did defendant Dunlop have a quality assurance department or any quality control process by any name designed to ensure that the tires manufactured by defendant Dunlop conformed to their design specifications? If yes, identify each person involved with the quality control process at the plant where the subject tire was manufactured for the 12 months preceding and following the manufacture of the subject tire.

**RESPONSE TO INTERROGATORY NO. 10:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, and unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states: Yes. DUNLOP refers plaintiff to the visual standards manual and to the testing standards and compliance test results pertaining to Federal Motor Vehicle Safety Standards No. 119. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality. DUNLOP also refers plaintiff to 49 Code of Federal Regulations Part 571.119. Further, DUNLOP states that Tom Rolls was the Quality Assurance

Manager in the year 2000 at the plant where the subject tire was made.

**INTERROGATORY NO. 11:**

Was there any testing associated with the design and/or manufacture of the subject model tires? If so, please identify and describe each type of testing, where it occurred, when it occurred, who performed the testing, the results of the testing and to whom the results were reported. To the extent there are documents, photographs, videos, and/or electronic data reflecting any of the information requested in this interrogatory, please provide any such materials with the answer to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 11:**

DUNLOP incorporates its general objections to the definition of "subject model tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, DUNLOP refers plaintiff to the testing standards and compliance test results pertaining to Federal Motor Vehicle Safety Standards No. 119 for the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality. DUNLOP also refers plaintiff to 49 Code of Federal Regulations Part 571.119. Further, DUNLOP states that Thomas M. Johnson, Jr., who was DUNLOP's Tire Performance Manager at the time the subject tire was made, is knowledgeable about testing.

**INTERROGATORY NO. 12:**

Please describe the manner in which the employee(s) that manufactured the subject tire

was or were compensated and specifically include whether that compensation was based on an hourly basis, on the basis of production or some combination thereof.

**RESPONSE TO INTERROGATORY NO. 12:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

**INTERROGATORY NO. 13:**

Please state whether the employee(s) that manufactured the subject tire was or were subject to any production requirements and, if so, please state the nature of those requirements and the sanctions and/or consequences of failing to meet those production requirements.

**RESPONSE TO INTERROGATORY NO. 13:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP also object that this interrogatory is vague and ambiguous as to the undefined term "production requirements." DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

## INTERROGATORY NO. 14:

Identify by name, address, occupation, place of employment and qualifications to give an opinion, each person expected to be called as an expert witness at trial, either retained or non-retained, on behalf of defendant Dunlop, and state the general nature of the subject matter on which each expert is expected to testify, each expert's hourly deposition fee, whether a written report was made and if so the name and address of the person who has custody of it, and when and where it may be examined by counsel for the Plaintiff.

## RESPONSE TO INTERROGATORY NO. 14:

DUNLOP objects to this interrogatory to the extent that it prematurely seeks information that Rule 26(a)(2) of the Federal Rules of Civil Procedure protects from disclosure at this stage of the litigation. DUNLOP further objects that this request seeks to impose obligations beyond those imposed or authorized by the expert disclosure requirements set forth in Rule 26(a)(2).

## INTERROGATORY NO. 15:

Did defendant Dunlop manufacture the original equipment rear tire of the subject motorcycle? If so, list and describe any differences between the original equipment tire and the subject tire including the reasons for each change. To the extent there are documents, videos, photographs, and/or electronic data reflecting any of the information requested in this interrogatory, please provide any such materials with the answer to this interrogatory

## RESPONSE TO INTERROGATORY NO. 15:

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories." In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further

objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states: it supplied OEM tires to Honda for use on the 1985 Honda Goldwing but has no knowledge of whether Honda actually installed a Dunlop tire as the OEM tire on the "subject motorcycle." DUNLOP objects that this request is overbroad with respect to the time period involved and refers plaintiff to the change history for the subject tire for the years 1999, 2000, and 2001. DUNLOP will produce this change history following the entry of a suitable protective order intended to safeguard its confidentiality.

## INTERROGATORY NO. 16:

Identify each subject model tire returned to defendant Dunlop pursuant to a warranty claim or claimed adjustable condition and identify defendant Dunlop's determination as to the condition of said tires, including any adjustable or non-adjustable condition found. To the extent there are documents, videos, photographs, and/or electronic data reflecting any of the information requested in this interrogatory, please provide any such materials with the answer to this interrogatory.

## RESPONSE TO INTERROGATORY NO. 16:

DUNLOP incorporates its general objections to the definition of "subject model tires" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories." In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, DUNLOP refers plaintiff to the adjustment data collected between 2000 and May 2005 for Dunlop Qualifier K627B 150/90B15M/C74H tires manufactured in the year 2000 . DUNLOP will produce this data following the entry of a suitable protective order intended to safeguard the confidentiality of the data.

**INTERROGATORY NO. 17:**

How many tires have been manufactured from the green tire specification of the subject tire?

**RESPONSE TO INTERROGATORY NO. 17:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories." In addition, DUNLOP objects to this request on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP refers plaintiff to the adjustment data vs. production data collected between 2000 and May 2005 for Dunlop Qualifier K627B 150/90B15M/C74H tires manufactured in the year 2000. DUNLOP will produce this data following the entry of a suitable protective order intended to safeguard the confidentiality of the data.

**INTERROGATORY NO. 18:**

How many tires manufactured from the same green tire specification as the subject tire were manufactured each day for the week of production in which the subject tire was

manufactured?

**RESPONSE TO INTERROGATORY NO. 18:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP refers plaintiff to the adjustment data vs. production data for collected between 2000 and May 2005 for Dunlop Qualifier K627B 150/90B15M/C74H tires manufactured in the year 2000. DUNLOP will produce this data following the entry of a suitable protective order intended to safeguard the confidentiality of the data.

**INTERROGATORY NO. 19:**

How many tires were manufactured by each shift on the day the subject tire was manufactured at the plant where the subject tire was manufactured?

**RESPONSE TO INTERROGATORY NO. 19:**

DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only

relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states that this information cannot be ascertained, but refers plaintiff to the adjustment data vs. production data collected between 2000 and May 2005 for the Dunlop Qualifier K627B 150/90B15M/C74H tires manufactured in the year 2000. DUNLOP will produce this data following the entry of a suitable protective order intended to safeguard the confidentiality of the data.

**INTERROGATORY NO. 20:**

Identify DOT numbers for the tires identified in Interrogatory No. 18 and identify the purchasers for those tires by name, address, and telephone number.

**RESPONSE TO INTERROGATORY NO. 20:**

DUNLOP objects to this request on the grounds that it is overly broad, is unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, particularly to the extent that it is not limited to the model, size, and type tire at issue in this litigation. The only relevant tire in this case is the Dunlop Qualifier K627B 150/90B15M/C74H. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, DUNLOP states: Not applicable. The only relevant tire is the Dunlop Qualifier K627B 150/90B15M/C74H bearing DOT No. DAWVM711200. No other tires were made from the same green tire specification as this subject tire.

**INTERROGATORY NO. 21:**

Has defendant Dunlop ever taken any steps to have any of the subject model tires returned for any reason, including but not limited to any concern that any such tires could fail prior to the end of its "tread life" (defined as the depth of tread at which the manufacturer recommends the tire be taken out of service)?

**RESPONSE TO INTERROGATORY NO. 21:**

DUNLOP incorporates its general objections to the definition of "subject model tires" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, and overly broad, assumes facts, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence. DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.

Without waiving its objections, and subject to its understanding of this request, DUNLOP states that it has taken no such steps with respect to the Dunlop Qualifier K627B 150/90B15M/C74H tire.

**INTERROGATORY NO. 22:**

If defendant Dunlop claims the injury to Plaintiff Trish McCloud was caused or contributed to by the acts or omissions of any person, party or entity, state the name, address, telephone number and employment of each such person, and:

    a.      State all facts upon which defendant Dunlop relies to make said contention;

    b      State the name, address and job title of each person who has knowledge or claims to have knowledge or each such act or omission of each such person;

    c      List and fully identify by title, date, author and current custodian each document and tangible [*sic*] which relates or refers to each such act or omission of each such person.

**RESPONSE TO INTERROGATORY NO. 22:**

See DUNLOP's affirmative defenses, DUNLOP's cross-claim against plaintiff William Booker, the deposition of plaintiff William Booker, and the depositions of the other fact witnesses taken to date.

**INTERROGATORY NO. 23:**

Please identify all advertising materials, no matter what medium, that were transmitted or distributed to the public in any way, and that were developed or prepared by the defendant Dunlop or an agent or contractor which mention the subject model tire or reference the defendant Dunlop's motorcycle tire line of products. To the extent there are documents, videos, photographs, and/or electronic data reflecting any of the information requested in this interrogatory, please provide any such materials with the answer to this interrogatory.

**RESPONSE TO INTERROGATORY NO. 23:**

DUNLOP incorporates its general objections to the definition of "subject model tires" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories. In addition, DUNLOP objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence.

Without waiving its objections, and subject to its understanding of this request, DUNLOP states that it will produce an available representative example of print advertisements for the Dunlop Qualifier K627B 150/90B15M/C74H tire that ran during the 12-month period preceding the purchase of the subject tire.

Respectfully submitted,

WILLIAMS, MONTGOMERY
 & JOHN, LTD.
20 North Wacker Drive, Suite 2100
Chicago, IL 60606
T:  (312) 443-3200
F:  (312) 630-8523

_____
Thomas H. Neuckranz
Edward R. Moor
Claire L. Lunardini
**ATTORNEYS FOR DEFENDANTS
GOODYEAR DUNLOP TIRES NORTH
AMERICA, LTD., AND THE
GOODYEAR TIRE & RUBBER
COMPANY**

I have read the foregoing DEFENDANT GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.'S RESPONSE TO PLAINTIFF TRISH McCLOUD'S FIRST INTERROGATORIES. I am the Tire Performance Manager of GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I certify, pursuant to § 1-109 of the Illinois Code of Civil Procedure, that the matters stated in the foregoing document are based upon information supplied to me and I believe them to be true and correct, except as to those matters that are stated on information and belief, and as to those matters I believe them to be true based upon the investigations conducted by the corporation.

GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.

By: _____

Hubert T. Thompson
Tire Performance Manager

County of _ERIE_ )
                  )
State of _NEW YORK_ )

Signed and sworn before me this
_21_ day of _JUNE_ , 2005.

_____
Notary Public

MARCIA M. SZCZEPANIAK
No. 01SZ6101216
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 11/10/20_07_

524566.1/80596.05087

21

# EXHIBIT

# - B –

## Minute Entries

1:04-cv-01118-JBM-JAG McCloud v. Goodyear Dunlop Tire, et al

### U.S. District Court

### Central District of Illinois

Notice of Electronic Filing

The following transaction was received from KB, ilcd entered on 9/14/2004 at 9:03 AM CDT and filed on 9/10/2004

**Case Name:**     McCloud v. Goodyear Dunlop Tire, et al
**Case Number:**     1:04-cv-1118
**Filer:**
**Document Number:**

**Docket Text:**
Minute Entry for proceedings held before Judge John A. Gorman: Attys
Rawles/Perkins/Parrish/James/Lunardini and Moor/Neuckranz/Lawson for Durree and Marrs present via
phone for Rule 16 conference at 10:00 a.m. on Friday, 9/10/04 - same held. Court approves the proposed
discovery plan and enters the following dates for cases 04-1118 and 04-1159: Discovery due by
2/15/2006. Motions due by 3/24/2006. Final Pretrial Conference on Friday, 7/14/2006 at 02:00 PM (meet
with law clerk for jury instruction conference) and Jury Trial set on Monday, 8/7/2006 at 09:00 AM both
in person in Peoria (Courtroom B) before Chief Judge Joe Billy McDade. (KB, ilcd)

The following document(s) are associated with this transaction:

**1:04-cv-1118 Notice will be electronically mailed to:**

Randy W James    rjames@jtplaw.com, jtplaw@jtplaw.com

Claire Lauren Lunardini    cll@willmon.com, tammy@willmont.com

Edward R Moor    erm@willmont.com, eileen@willmont.com

Mark E Parrish    mparrish@jtplaw.com, mparrish@jtplaw.com

Lauren E Perkins    lperkins@jtplaw.com

Edward H Rawles    ehrawles@rosklaw.com, kbjudd@rosklaw.com

**1:04-cv-1118 Notice will be delivered by other means to:**

Barry R Conybeare
CONYBEARE LAW OFFICE PC
519 Main Street
St Joseph, MI 49085



EXHIBIT

_B_

Michael D Marrs
MICHAEL D MARRS PC
5709 Red Arrow Highway
PO Box 618
Stevensville, MI 49127

Thomas H Neuckranz
WILLIAMS MONTGOMERY & JOHN LTD
20 N Wacker Dr
Suite 2100
Chicago, IL 60606

# EXHIBIT

# - C -

VIDEOTAPED DEPOSITION
THOMAS M. JOHNSON, JR.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

------------------------------------------
TRISH LEE McCLOUD, by and through her legal
guardian, CANDY L. HALL, and WILLIAM BOOKER,

                    Plaintiffs,


        - vs -        Case No. 04-1118
                     Division: Peoria

GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.
and THE GOODYEAR TIRE & RUBBER COMPANY,

                    Defendants.
------------------------------------------


        Videotaped deposition of Defendant

Goodyear Dunlop Tires North America, Limited, by

and through THOMAS M. JOHNSON, JR., taken pursuant

to the Federal Rules of Civil Procedure, in the law

offices of The Buffalo Marriott, 1340 Millersport

Highway, Amherst, New York, on April 14, 2006,

commencing at 9:36 a.m., before ANNE T. BARONE,

RPR, Notary Public.


        JACK W. HUNT & ASSOCIATES, INC.

EXHIBIT
_C_

PENGAD 800-631-6989

## Page 2

APPEARANCES:  JAMES, TOTTA & PARRISH,
          By RANDY W. JAMES, ESQ., and
              MARK E. PARRISH, ESQ.,
          218 NE Tudor Road,
          Lee's Summit, Missouri 64086,
          Appearing for the Plaintiffs.

          WILLIAMS, MONTGOMERY & JOHN, LTD.,
          By THOMAS H. NEUCKRANZ, ESQ.,
          20 North Wacker Drive, Suite 2100,
          Chicago, Illinois 60606,
              and
          STEPHAN, ORINGHER, RICHMAN,
          THEODORA & MILLER,
          By DARRYL A. ROSS, ESQ.,
          535 Anton Boulevard, Ninth Floor,
          Costa Mesa, California 92626-7109,
          Appearing for the Defendants.

PRESENT:    MATTHEW W. MESSING, Videographer.

(STIPULATIONS:  Waive filing and signing of
the transcript, waive Oath of the Referee,
reserve all objections until trial, with
exception of objections as to form.)

T H O M A S   M.   J O H N S O N , J R., 171
Meadowlawn Road, Cheektowaga, New York 14225,
after being duly called and sworn, testified as
follows:

EXAMINATION BY MR. JAMES:

## Page 3

1    Q.  Good morning, Mr. Johnson.  My name is
2  Randy James.  We met briefly before the deposition.
3  And, as you may know, I and Mark Parrish along with
4  me represent Trish McCloud, who is the Plaintiff in
5  this case.
6         Would you tell us your home address please,
7  sir.
8    A.  171 Meadowlawn, M-E-A-D-O-W-L-A-W-N,
9  Road, Cheektowaga, New York, 14225.
10    Q.  Are you currently employed, sir?
11    A.  By the Town of Cheektowaga.
12    Q.  And what position do you hold with that
13  town?
14    A.  I'm a town councilman.
15    Q.  How long have you held that position,
16  sir?
17    A.  30 years.
18    Q.  Do you hold any other employment?
19    A.  No.
20    Q.  It's my understanding that as recently
21  as 2005, you were employed by the Defendant in this
22  case, Goodyear Dunlop Tires of North America
23  Limited; is that correct?

## Page 4

1    A.  That is correct, sir.
2    Q.  And when was the last date on which you
3  were employed by Goodyear Dunlop?
4    A.  May 31st, 2005.
5    Q.  What was the reason that you left
6  Goodyear Dunlop?
7    A.  Nearly 39 years and eligible for
8  retirement.
9    Q.  And does that mean, in answer to my
10  question, that you retired?
11    A.  That's correct, sir.
12    Q.  How long -- you said that you worked 39
13  years.  I take it that that time frame included not
14  only Goodyear Dunlop but also the Dunlop Tire
15  Corporation before that?
16    A.  That's correct.
17    Q.  When you retired from Goodyear Dunlop,
18  what job position did you hold, sir?
19    A.  Tire performance manager.
20    Q.  Tell us if you would, please, what your
21  duties were as tire performance manager?
22    A.  Well, I was -- I worked with the law
23  department on assignment in evaluating claims

## Page 5

1  tires.  I worked with the adjustment centers on
2  returns and following up on trends.  And I worked
3  with the design and development group in terms
4  of -- and that's for all products -- in terms of
5  any improvements that seemed to be indicated by
6  field experience.
7         I also drafted all technical literature,
8  wrote all service information, and represented the
9  company on the Rubber Manufacturers Technical
10  Publications Committee and drafted service
11  information for that committee and for the RMA.
12         I basically pursued the ultimate quality of
13  the product.
14    Q.  How long did you hold that position,
15  sir?
16    A.  Since 1985.
17         I have my CV here, if you would like to --
18    Q.  I was going to ask you about that.
19    A.  Here you are.  Sorry.
20    Q.  That's quite all right.
21    THE WITNESS:  Mr. Neuckranz.
22    MR. NEUCKRANZ:  By the way, this is one of
23  the things that you asked for in the short notice

JACK W. HUNT & ASSOCIATES, INC.
1420 Liberty Building

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 6

1  for this deposition. There's some other things
2  that I might as well give to you right now that --
3  you asked for his file.
4      MR. JAMES: Yes.
5      MR. NEUCKRANZ: And what I'm handing you is
6  not his entire file but the file that he has that
7  is not discoverable; it's material that's already
8  been produced, except for photographs. I think a
9  lot of those photographs have already been
10  produced. But you can see that it's got some of
11  his own notes in there. He's got other portions of
12  the file here which consists of deposition
13  transcripts and so forth.
14      In addition to what I just handed you, I
15  want to give you something that -- it's more
16  specifications. More recent specifications
17  concerning this model tire that we've marked as
18  confidential, which is part of the response to your
19  long 30(b)(6) request.
20      And also I want to just mark as an exhibit
21  for this deposition our response to your amended
22  30(b)(6) long notice.
23      So, Ms. Court Reporter, can you just mark

Page 7

1  that?
2      MR. JAMES: Well, let's do this: As we
3  know, the Court struck this response.
4      MR. NEUCKRANZ: No, that's not true.
5      MR. JAMES: And -- well, that's my
6  understanding of it. And if you have a different
7  understanding, you can state it. But you're
8  certainly entitled to mark that as an exhibit at
9  the time that I concede the witness to you, sir.
10      MR. NEUCKRANZ: Well, that's --
11      MR. JAMES: If you want to mark it as an
12  exhibit, you can do it during your examination.
13      MR. NEUCKRANZ: Okay. That's fine. But let
14  the record show that that's the intent. So that I
15  don't have to repeatedly object during this
16  deposition during the times that you ask questions
17  about these 44 areas in this second notice, I will
18  stand by the objections that are listed in my
19  30(b)(6) notice, which I will mark as an exhibit to
20  this deposition after you finish questioning.
21      MR. JAMES: And I do not agree that -- that
22  the submission of that document on this record
23  preserves any objections. We are taking this

Page 8

1  deposition pursuant to the Federal Rules of Civil
2  Procedure. Certain objections, particularly
3  substantive objections as to relevancy, are
4  preserved. Form objections are not.
5      And so I advise you that if you have an
6  objection to make, you need to make it in
7  accordance with the rules; otherwise, we'll take
8  the position --
9      MR. NEUCKRANZ: I will do it in accordance
10  with the rules.
11      MR. JAMES: All right.
12      MR. NEUCKRANZ: This document is also a
13  response to your 30(b)(6) notice which also, as I'm
14  sure you've read it, partially responds to your
15  30(b)(6) notice in many areas. And you can ask
16  Mr. Johnson additional questions concerning the
17  areas that have already been testified to or
18  responded to in this case. That's fine. I'm not
19  precluding you from asking the questions.
20      I'm simply making my record of already
21  responding to your 30(b)(6) in various ways as
22  indicated in this exhibit to be marked and also
23  stating my objections in writing. I will also

Page 9

1  gladly do it orally.
2      BY MR. JAMES:
3      Q. Mr. Johnson, let me hand you what I
4  have marked for identification as Exhibit 100, and
5  I want to ask you, sir, if that is a true and
6  correct copy of your current resume.
7      A. I have an identical copy.
8      Q. All right. If that's all right, I'll
9  take this back and refer to it myself.
10      Just so we're clear, is Exhibit 100 a true
11  and correct copy of your current resume?
12      A. That's correct, sir.
13      Q. All right. And does it fairly and
14  accurately set forth the job positions that you
15  have held with both Dunlop and Goodyear Dunlop
16  since 1966?
17      A. Yeah. If I might add, sir, it was
18  Dunlop Tire & Rubber Corporation who hired me
19  originally, and they were succeeded by Dunlop Tire
20  Corporation, and which is now represented by
21  Goodyear Dunlop Tires North America.
22      Q. Fair enough.
23      Now, as apart of your job as tire

3 (Pages 6 to 9)

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 10

1  performance manager over the 20 or so years that
2  you've held that position, did you, from time to
3  time, offer testimony in tire failure cases on
4  behalf of Dunlop and/or Goodyear Dunlop?
5      A.  Yes.
6      Q.  And have you served in the capacity
7  that you're appearing here today as corporate
8  representative before?
9      A.  Yes.  Excuse me.
10     Q.  Now, Mr. Johnson, you understand that
11 you have been designated by Goodyear Dunlop in this
12 case to testify as Goodyear Dunlop's corporate
13 representative in this deposition?
14     A.  That's my understanding, sir.
15     Q.  And do you also understand, sir, that
16 as Goodyear Dunlop's corporate representative, our
17 Court rules require you to testify as to matters
18 known or reasonably available to Goodyear Dunlop on
19 the subjects for which you've been designated in
20 our deposition notice?
21     A.  To the best of my knowledge, yes, sir.
22     Q.  You understand, sir, that, therefore,
23 we're not just here to ask you about your personal

Page 11

1  knowledge, but we're here to ask you about Goodyear
2  Dunlop's corporate knowledge?
3      MR. NEUCKRANZ:  Objection.  He can only know
4  what he knows.  But if he knows, he can answer.  If
5  he doesn't know, he'll have to answer that way too.
6      BY MR. JAMES:
7      Q.  Answer my question, please.
8      A.  It's my understanding that whatever I
9  know regarding what Goodyear Dunlop has received,
10 has reviewed, has dealt with that relates to this
11 matter is what I will testify on.
12     Q.  All right, sir.  And do you also
13 understand that you are under the oath to tell the
14 truth, the whole truth, and nothing but the truth,
15 just as if you were testifying in person before the
16 Court and jury in this case?
17     A.  Yes, sir.
18     Q.  Now, what have you done, sir, to
19 prepare yourself to testify on behalf of Goodyear
20 Dunlop in this deposition?
21     A.  I was -- well, first of all, I saw the
22 tire evidence when I was still a tire performance
23 manager in May of 2005 and directed the taking of

Page 12

1  photographs.  I undertook fluoroscopy and
2  thereafter acted to advise our attorneys.
3      And this spring -- pardon me -- March, I
4  undertook a further examination and directed that
5  photographs be taken and certain measurements and
6  then was asked to review a rather imposing number
7  of documents by our attorneys, which I endeavored
8  to at least skim and -- and be aware of.  And I
9  have brought them -- to the extent they -- they
10 existed in boxes and on a kitchen table, I've
11 attempted to bring them here.
12     Q.  All right, sir.  Well, let's get on the
13 table specifically what it is that you brought with
14 you that you have used to prepare yourself for this
15 deposition.
16     A.  I believe you have this set of -- of
17 reports and photographs.  I also brought a drawing
18 that Mr. Neuckranz was interested in regarding a
19 light truck, which is like unto a passenger
20 construction.  And let's see what else.
21     And, of course, I brought my -- I brought
22 my -- I brought my CV, which Mr. Neuckranz had no
23 previously had.  And I -- I think I have here some

Page 13

1  additional documents and -- and in addition to, of
2  course, the reports and photos.
3      One such document is a report I believe by
4  Gary Derian.  This is the service information and
5  from our warranty brochure that I -- that I wrote.
6      MR. NEUCKRANZ:  He said to put it on the
7  table.
8      Do you want him to describe everything he
9  has?
10     MR. JAMES:  Well, what I'd like to do I
11 think for the moment is let's get the file that
12 you've got here together.
13     THE WITNESS:  Yes, sir.
14     MR. JAMES:  And what I'd like to do, I think
15 for the sake of expediency, is to just mark this as
16 a group exhibit, and then I think what we'll do is
17 probably have you describe what's in it.
18     So if you could, let's put all these
19 documents back together in whatever order you deem
20 appropriate.
21     MR. NEUCKRANZ:  You've got deposition
22 transcripts --
23     MR. JAMES:  Or how you brought it.

4  (Pages 10 to 13)

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 14

1    MR. NEUCKRANZ: -- and so forth too, Tom. I
2  think you should put everything on the table.
3    THE WITNESS: Well, I'll put those over
4  here. This is my folder. My work folder.
5    BY MR. JAMES:
6    Q.  And that's what I'm most interested in.
7    Let me ask you this with respect to the
8  depositions: Did you make any notes or
9  highlighting --
10    A.  No, sir.
11    Q.  -- in the deposition transcripts?
12    A.  No, sir.
13    Q.  Did you alter them from the form in
14  which you received them in any way?
15    A.  I believe on a set of notes by Tony
16  Mills I wrote a scratch note regarding a man named
17  Knighton to the effect that he had not checked the
18  tires.
19    Q.  Okay.
20    A.  But that was -- in fact, I was thinking
21  about it -- had nothing to do with the notes I was
22  looking at. It was just a piece of paper that I
23  could write on.

Page 15

1    MR. JAMES: All right. Well, I think what
2  we'll do, Tom, is probably in that case just make a
3  list for the record of the depositions that
4  Mr. Johnson has been supplied with, but I don't
5  think that we need to burden the record with those.
6    MR. NEUCKRANZ: Well, whatever you want to
7  do.
8    MR. JAMES: Okay.
9    THE WITNESS: Do you want me to start
10  handing you this other -- or put that over here?
11    BY MR. JAMES:
12    Q.  Yeah, if you could get that out for us,
13  I'd sure appreciate it.
14    A.  That -- that drawing is also in that
15  stack.
16    Q.  All right.
17    A.  I'm going to stack the other items sent
18  to me by counsel in addition to my own notes and
19  photos.
20    My wife will be very happy that I was able
21  to clear these things out from under her kitchen
22  table.
23    This is a duplicate set of the reports and

Page 16

1  photos. This particular folder.
2    Q.  Okay. You're pointing to documents
3  that are in the yellow folder. You're saying that
4  those --
5    A.  The manilla folder.
6    Q.  -- two sets of documents are one and
7  the same?
8    A.  This set which is original photos.
9  This set which are copies. That is, color copies
10  like unto the set that you have.
11    The only thing I haven't given --
12    Q.  You're talking about the set that
13  Mr. Parrish --
14    A.  That's correct.
15    Q.  -- is looking at right now?
16    A.  Yes, sir. Yes, sir.
17    MR. JAMES: Would you compare those for me?
18    THE WITNESS: So this is the original set
19  from which those copies that were given to you was
20  made.
21    BY MR. JAMES:
22    Q.  Okay.
23    A.  This is the original.

Page 17

1    Q.  Okay.
2    A.  These I did not -- I did not photocopy.
3  These are photographs that were sent to me by
4  counsel that Mr. Mills apparently took. This is a
5  set of photographs that a man named Kasner took.
6  And that's my CV.
7    Q.  All right. Well, let's do this then:
8  Let's proceed first by handing you what I've
9  marked --
10    A.  Thank you.
11    Q.  -- as a Group Exhibit 101 for
12  identification. And I want to just ask you, sir,
13  to describe for us generally what is in that stack
14  of materials. We will go through it specifically
15  and individually as the need arises.
16    A.  The deposition notices. The -- the
17  interrogatory responses. That is the recent --
18  that relate to the deposition notice, discovery
19  responses.
20    A drawing of a light truck tire that
21  typifies the constructions of passenger and light
22  trucks since the '70s. A drawing that was done
23  from an exact tire with exact dimensions of a

JACK W. HUNT & ASSOCIATES, INC.
1420 Liberty Building

8724b809-140f-46d7-94dd-c5c8aea223ab

## Page 18

1  motorcycle tire like unto the subject tire with
2  proper inflation and load. A drawing that was done
3  of the same tire under -- underinflated
4  substantially. Another copy of my truck drawing.
5      Mr. Derian's report, which is an exhibit
6  apparently to someone's deposition. The service
7  information that I wrote for motorcycle. The
8  side-by-side renderings of the -- of the properly
9  inflated and underinflated tire and the change in
10  the radius to the pavement. Another properly
11  inflated tire. Underinflated tire.
12      Okay. This is one of the -- one of the
13  documents that I had been asked to review was
14  military standards, visual inspection guide for
15  pneumatic tires, and specifically cord pull. And I
16  pulled out -- since it was a large volume, I pulled
17  out the cord-pull page and the cover just for
18  identification so I could look at it if I needed to
19  or in this case, bring it here.
20      This is a complete copy of the brochure
21  information which includes the tire registration
22  certificate and the instructions thereto. And this
23  would be for all motorcycle tires but particularly

## Page 19

1  directed at touring type tires. Full-line catalog
2  page that relate to the Honda vehicles involved.
3      Correspondence from Darryl Ross conveying to
4  me the report of John Smith from STL or Standards
5  Testing Laboratories.
6      Excuse me. This appears to be a notice of
7  videotape deposition and a listing of subjects.
8  Appears to be a duplicate of the same thing.
9      This is an amended notice, and I'm not sure
10  what -- a punch point of -- of a short list of
11  subjects.
12      This is a set of deposition subject and
13  responses by our attorneys apparently filed in
14  United States District Court.
15      Q. Well, I guess it is an exhibit now.
16      A. This is a -- something that I believe
17  the company produced. It is the adjustment tally
18  for the year 2000's production, so it shows the
19  production periods, and it shows the numbers
20  adjusted and the percent of adjustment and for the
21  15090B15K627, which is white sidewall or RWL,
22  raised white letters.
23      And two pages -- I think it's three pages

## Page 20

1  from the visual and x-ray standards of the company
2  that relate to innerliner. One page is -- they do
3  have different numbers -- is marked McCloud Booker
4  0052, and it is foreign material innerliner area.
5  Next page is cord through liner, and it's McCloud
6  Booker 0050. The next page is crack in liner,
7  McCloud Booker 0051.
8      Okay. The next set is -- I believe it's
9  notes by Anthony Mills or Tony. This appears to be
10  an inspection undertaken in 19 -- or rather 2004
11  and of a follow-up inspection in October of -- of
12  '05 with respect to an exemplary tire or a sample
13  tire of another variety, the K425, and an exemplary
14  tire.
15      MR. NEUCKRANZ: Tom, you don't have to read
16  it all. Just tell him it's Tony Mills's notes.
17      THE WITNESS: They're Tony Mills' notes
18  recorded 2004, 2005.
19      These are footprints accomplished on the
20  Tinius Olsen machine with a pantograph -- not a
21  pantograph. Sorry. With an ink blot. And
22  apparently, yes, the pantograph drawings are
23  coincidental with these photos showing the

## Page 21

1  footprint as it grows through progressive
2  deflection or -- or underinflation at -- at
3  controlled load and the drawings of the sidewall
4  deflected at various deflections. Also Tony Mills.
5      This is a rendering of four -- looks like
6  four -- four or five notations in the change
7  history for the subject tire, 2 -- from 2000, when
8  it was released again into production.
9      And this -- I'm sorry. This next document
10  is a set of Department of Transportation and Dunlop
11  extended testing of an identical manufacture period
12  tire, same week of production.
13      This is a -- appears to be -- this appears
14  to have been a reduction or a portion of a design
15  drawing for the tread and for the cavity.
16      This is a set of the specifications to which
17  the subject tire was made in the 12th week of 2000.
18  This is a set of specifications under the new
19  computerized system that exists this spring. Was
20  made I believe in -- I'm sorry, not this spring but
21  in the 25th -- or July of -- June, July of 2005.
22  These are essentially the same.
23      This is a set of photos that were -- that

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 22

1  were taken last week when the subject tire was
2  returned.
3      This -- these -- this is pertinent pages
4  from a 1985 special edition owner's manual.  And
5  this is a second copy of same.
6      BY MR. JAMES:
7      Q.  All right, sir.  Have you now described
8  all of the documents that are contained within what
9  we've marked as Exhibit 101?
10     MR. NEUCKRANZ:  This pile.
11     THE WITNESS:  This is separate from this
12 pile.
13     BY MR. JAMES:
14     Q.  Yes.  But we've marked the pile you
15 have in your hand as Exhibit 101, and have you
16 described for us all of the documents that are in
17 that exhibit?
18     A.  I have, sir.
19     Q.  All right.  Now, if you would, please,
20 you have a binder-clipped set of materials there.
21 Would you describe for us what those are, please.
22     A.  These are my notes from May of --
23 May -- in fact, they're dated May 17th of '05, when

Page 23

1  I first saw the tire.
2      Q.  All right.  And do the -- it looks like
3  there are photographs in plastic sleeves attached
4  to that --
5      A.  Yes, sir.
6      Q.  -- set of notes?
7      A.  Yes, sir.
8      Q.  Do those photographs go with those
9  notes?
10     A.  That's correct, sir.
11     Q.  All right.  What I'd like to do is mark
12 that as Group Exhibit 102.  And would you tell us --
13 us --
14     A.  Is this okay?
15     Q.  Yes, that's very good.  Thanks.
16     And would you tell us when the photographs
17 that are a part of Exhibit 102 were taken.
18     Were they taken contemporaneously with your
19 May 17th, 2005 note taking or at another time?
20     A.  They were taken at the same time at my
21 direction.
22     Q.  All right, sir.  And when you say at
23 your direction, are -- are you saying that someone

Page 24

1  else took those photographs?
2      A.  That's correct.
3      Q.  An employee of Goodyear Dunlop?
4      A.  No.  A consultant that is brought in
5  for videotaping and photographing.
6      Q.  All right.  And what is the name of the
7  person and/or company that took those photographs?
8      A.  Philip Sack, S-A-C-K.
9      Q.  And where is Mr. Sack located?
10     A.  I believe it's Tonawanda, New York.
11     Q.  Does he have a company here in the
12 area?
13     A.  Yes.  I'm trying to think of the name
14 of the -- of -- I can't think of it right now, but
15 I will.  We may have it actually on an entry.
16     I don't see it.  Anyway, he's local and has
17 a considerable amount of camera equipment and takes
18 photos and takes videotape if we require that
19 should we dismount the tire.  He was not brought in
20 for that purpose because it was already dismounted.
21     Q.  All right, sir.
22     A.  And now there's another set attached to
23 the same grouping.

Page 25

1      Q.  Okay.
2      A.  This is a set of photos 1 through 19
3  taken at my direction by the technician who is also
4  our x-ray technician that worked for me.
5      Q.  And was that also in the May 2005
6  examination?
7      A.  That's correct.
8      Q.  All right.
9      A.  That's this grouping, sir.
10     Q.  Okay.
11     A.  And shall I continue?
12     Q.  Please, continue.
13     A.  These are my notes forwarded to
14 Mr. Neuckranz and Mr. Moor of -- his associate, in
15 March of this year, after I had examined the
16 subject tire once again.  It was back at Tonawanda.
17 And a -- and a tire that had apparently been
18 tested, that it had been run for about 3200 miles
19 and provided as an exhibit by I believe your firm.
20 And my notes on the two tires.
21     Then these are my drawings that I originally
22 did in 1983 and up -- and updated in -- I think
23 thereafter in the '80s, as we did seminar

7 (Pages 22 to 25)

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 26

1 presentations.
2     This is a drawing of a tire that has
3 generated a blister in the upper sidewall. And, in
4 fact, in this particular case, it was contact --
5 it's a contact for fender gutter. That's what
6 split the blister.
7     These are my drawings that I worked with an
8 employee of the development group to provide the
9 inside -- inside line from the Tinius Olsen
10 deflection experiments.
11     Tinius Olsen machine. A standard machine
12 used for tire strength under the DOT requirements
13 and for whatever uses we wanted to put it.
14     This is -- this is -- these two pages are --
15 take the drawings on the -- on the just previous
16 page and show them clearly on separate eight-by-11
17 sheets. One is properly deflected and one is
18 underinflated and, therefore, overdeflected.
19     This is a drawing that resulted from
20 positioning the tire in a leanover. Leanover.
21 Something that would be accomplished going through
22 a curve or a chicane. And some notes that I --
23 that I provided.

Page 27

1     Again, I -- I directed the -- the -- well, I
2 did part of the pantograph drawings and directed
3 the inside line based on tire sections and based on
4 the gauge of the materials in the tire for seminar
5 presentations for Mr. Mills, myself, and a couple
6 of other people that normally provided seminars at
7 rallies.
8     This was done with a wood block on the
9 Tinius Olsen machine and intended -- intended to
10 show the sharp deflection that would occur in an
11 overdeflected tire. That is, an underinflated tire
12 that -- overdeflection simply means underinflated
13 for the load.
14     In a -- in an underinflated tire the
15 sidewall typically buck -- buckles inward sharply
16 if encountering an object like a curb ledge, a
17 driveway apron, a chuckhole. And so this was a
18 wood block placed on the -- on the table of the
19 Tinius Olsen machine to generate a deflection.
20     This is Mr. Mills' shot of the tire and
21 profile.
22     Q. When you say the tire, you're talking
23 about the subject tire?

Page 28

1     A. Subject tire, sir.
2     Q. All right. Let me interrupt you if I
3 might. You just got done describing a number of
4 drawings. The -- were all of those drawings done
5 in the 1980s?
6     A. Yes.
7     Q. The earliest of which I think I heard
8 you say was about 1983?
9     A. I believe that late '83 I did a couple
10 of these drawings, and then over the next couple of
11 years as we went to rallies, I completed the set.
12     Q. All right. So between 1983 and '85 or
13 6 you think --
14     A. '86.
15     Q. -- is the time frame for these
16 drawings?
17     A. That's correct, sir.
18     Q. All right, sir. Please continue.
19     A. The reason why this is of note is
20 because I wanted -- it was a photo that
21 demonstrated the irregular wear in the tread
22 pattern. I -- this is nothing more than a
23 photocopy blow-up of that same drawing showing the

Page 29

1 bumpiness. Excuse the term.
2     Also attached to that report that I had sent
3 to Mr. Neuckranz is a photocopy of a inside tire
4 shot that was accomplished in the course of
5 inspection. I believe this was by Mr. Sack. And,
6 in turn, blown up. And this photocopy demonstrates
7 some characteristics that I wanted to append to my
8 report to Mr. Neuckranz and Mr. Moor. This is a
9 second photo of the interior cord pull areas in a
10 6 to 8 o'clock region.
11     This is a copy of Mr. Sack's photograph of
12 the rim and valve hole. Another photograph of the
13 rim. Another photograph of the valve hole. I
14 don't know why I have multiples here. I'm sorry.
15     This is a -- this is a picture of the valve
16 hole from the outside looking down at the valve
17 hole and as it is bracketed by two wheel weights in
18 the spider of the rim. Spider meaning the support
19 columns of the rim.
20     Q. Spokes?
21     A. Spokes, yeah. Spokes traditionally to
22 me are the -- are the -- the classic tube type
23 wheel spokes.

JACK W. HUNT & ASSOCIATES, INC.
1420 Liberty Building

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 30

1    In any case, the -- this is a -- another
2  photo. This may be the same as the -- as the
3  previous of the inside of the tire and the areas
4  that I found of note. And this is yet another
5  photo of the -- of a split in the innerliner and
6  exposing the one ply and the material above the one
7  ply.
8    This -- this demonstrates the area where
9  the -- the bending at the edge of the pattern wear
10 occurred due to the elliptical shape of the tire
11 moving through the footprint under load and
12 underinflated and shows a score mark -- typical
13 score mark, by the way -- and shows flex lines in
14 the groove.
15   This is a set of Mr. Sack's photos taken I
16 believe in -- in March of this year, and these are
17 a set of blow-ups of different aspects of those
18 photographs. And this is a set of three
19 photographs taken about a week and a half ago by
20 the technician at my direction of the three
21 locations. I believe 3 o'clock and 9 o'clock.
22 Three photos of the shoulder groove cracking.
23   Q.  All right, sir. Now, does that

Page 31

1  complete the description of all of the documents
2  that are contained within Exhibit 102?
3    A.  Can I ask a question? Does Exhibit 102
4  include the other two piles right there?
5    Q.  No. It includes everything in that
6  binder clip.
7    A.  Just everything in here? That's
8  everything, sir.
9    Q.  All right. May I see that, please?
10   A.  Yes, of course.
11   Q.  Now, you also have banded together here
12 a stack of photographs that you say are photographs
13 taken by Mr. Mills?
14   A.  That's my understanding.
15   Q.  All right. And then you've got a clip
16 of copies of photographs taken by Dr. Kasner?
17   A.  Yes. I believe those are taken by
18 and -- and also blown up in that stack by
19 Dr. Kasner.
20   Q.  All right. Now, while we're at it and
21 we're getting everything on the table, would you
22 just go through the stack of depositions that
23 you've got over here on your left-hand side and

Page 32

1  just read for us the names of the people in those
2  depositions.
3    A.  Starting with --
4    Q.  And I don't care what order it's in.
5  Just as long as we get a list.
6    A.  William Booker.
7    You don't want the date or anything, just
8  the --
9    Q.  No. That's fine.
10   A.  All right. William Booker. William
11 Booker. Robert Grandberry. Clifford B. Anderson.
12   This appears to be a handwritten
13 statement -- statement by Robert Grandberry. May
14 have been an attachment to that previous
15 deposition.
16   This is the deposition of Anthony Mills.
17 Deposition of Hubert Thompson. William Booker.
18 This is a summary, Tony Mills. Ulric Evans.
19 Laurie Buckman. John Smith. Jacqueline Cooper.
20   Again, a handwritten statement signed by
21 Leon Knighton, K-N-I-G-H-T-O-N, Senior. Deposition
22 of Dana J. Telschow. Gary A. Derian, PE.
23   Should I continue, sir?

Page 33

1    Q.  Please.
2    A.  Thomas J. Rolls, R-O-L-L-S. Thomas
3  Rolls. Hubert Thompson. William Woehrle.
4    This is a set of notes and photographs
5  thereto. I honestly don't know whose notes these
6  are. It does say Mark Parrish. There's a tag or
7  a -- or where a tag was. Your name appears.
8  That's all I know. It's -- it has a deposition
9  exhibit number, and it's dated February 6th, '06.
10   MR. NEUCKRANZ: It's probably Woehrle's.
11   THE WITNESS: That may be.
12   There's several photos of the rear saddlebag
13 area and light rack for the -- for the -- for a --
14 an exemplary vehicle, a 1985 Honda Gold Wing.
15   Deposition of William J. Woehrle. Yes, that
16 would appear that these are related. The notes and
17 the deposition.
18   And, again, photographs taken of an
19 exemplary motorcycle. Additional photographs
20 showing some scales. Another set of photos that
21 seem to incorporate many of the photos that are
22 already in this -- in this binder. Another
23 deposition transcript of William J. Woehrle.

9 (Pages 30 to 33)

8724b809-140f-46d7-94dd-c5c8aea223ab

Page 34

1       Wait a second. Yes, it is.
2       And something I got some time ago. It is a
3   binder from William J. Woehrle Tire Forensics
4   Investigation, documents and photos rebuttal
5   prepared by -- for Mark Parrish.
6       That's everything I had on -- under my
7   kitchen table.
8       BY MR. JAMES:
9       Q.   All right. Mr. Johnson, have we now
10  identified for the record all of the documentation
11  that was supplied to you in advance of your
12  appearance in this deposition today?
13      A.   That's correct, sir.
14      Q.   And have you read all of the material
15  that we've identified that was supplied to you?
16      A.   Not all of it, no.
17      Q.   When were the depositions that you've
18  just identified supplied to you?
19      A.   It's my understanding that I received
20  them shortly after they were done, and I received
21  another grouping this month.
22      Q.   And what is your understanding of the
23  purpose of those depositions being supplied to you?

Page 35

1       A.   I -- the intent was that I get as --
2   get whatever information I could from the documents
3   to relate to the evaluations both of the -- the --
4   on behalf of Booker McCloud and on behalf of
5   Dunlop.
6       I did my best to skim or excerpt from
7   various depositions, but I certainly did not
8   intensely render them to memory and read them word
9   for word.
10      MR. NEUCKRANZ: Tom, just let me state and
11  object for the record, you know, he's not
12  designated as an expert in this case, and we put
13  that in writing to you. If you, you know, want to
14  ask him questions that elicit -- elicit expert
15  opinions, that's up to you. But go ahead.
16      BY MR. JAMES:
17      Q.   When was the first time that you became
18  aware of the motorcycle crash in which Ms. McCloud
19  was injured?
20      A.   I believe it was sometime in early
21  2005. Perhaps March or February.
22      Q.   Now, you understand, don't you, that
23  this crash occurred on May the 26th, 2002?

Page 36

1       A.   That's correct. That's --
2       Q.   Do you --
3       A.   I'm aware of that.
4       Q.   Do you have an explanation as to why
5   the tire performance manager of Goodyear Dunlop did
6   not learn about this crash until almost three years
7   after the fact?
8       A.   Again, I get my -- I receive my
9   assignments or received my assignments from the law
10  department.
11      Q.   And what you're saying I take it then
12  is that the timing of your notice of this crash and
13  your involvement in any evaluation relating to the
14  crash is a decision made by the law department?
15      A.   That's correct.
16      Q.   And for whatever reason, the first time
17  that you learned about it was almost three years
18  after the fact?
19      A.   It was my understanding when I was
20  notified -- in fact, I spoke with our -- our
21  in-house attorney was that --
22      MR. NEUCKRANZ: Well, objection as to
23  attorney-client privilege, but go ahead and answer.

Page 37

1       THE WITNESS: It was my understanding that
2   an investigation had -- had begun and that I was
3   now to be involved because the tire was coming to
4   me at Dunlop.
5       BY MR. JAMES:
6       Q.   And am I correct that the first time
7   that you actually laid eyes on the subject tire was
8   about two weeks before you retired?
9       A.   That's correct.
10      Q.   And then not again until March of this
11  year?
12      A.   That's correct.
13      Q.   Do you have an exact date of when it
14  was you saw the subject tire in March of this year?
15      A.   I think it was March 7th.
16      Q.   The reason I ask, sir, is because
17  Mr. Neuckranz requested on the 28th of March that I
18  specifically send the subject tire back to Goodyear
19  Dunlop to Mr. Thompson's attention so that a
20  decision could be made as to who Goodyear Dunlop
21  was going to designate as its corporate
22  representative to testify in this case.
23      MR. NEUCKRANZ: Objection.

10 (Pages 34 to 37)

8724b809-140f-46d7-94dd-c5c8aea223ab