## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| TRISH LEE McCLOUD, et al, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No. 04-1118 |
| ) | |
| GOODYEAR DUNLOP TIRES NORTH ) | |
| AMERICA, LTD., et al, ) | |
| ) | |
| ) | |
|     Defendants. ) | |

## <u>O P I N I O N   A N D   O R D E R</u>

Before the Court is Defendants' Motion for a Choice of Law Determination [Doc. 217] and accompanying Memorandum [Doc. 218] filed on June 13, 2007. Defendants request an Order holding that Michigan law governs this case. Plaintiff, Trish McCloud, filed a Brief in Response [Doc. 224] on June 25, 2007. At the final pretrial conference this Court ordered expedited briefing on this issue and Granted Defendants leave to file a Reply Brief. Defendants filed their Reply Brief [Doc. 229] on July 2, 2007. For the following reasons, this Court holds that Illinois Law governs this case and Defendants Motion [Doc. 217] is DENIED.

### I.
### BACKGROUND

This case arises out of a motorcycle accident that occurred on Interstate 55 in Livingston County, Illinois. Plaintiff,

Trish McCloud was riding on the back of a motorcycle driven by Plaintiff, William Booker.[1]  Together they were returning to Baldwin, Michigan from a "blessing of the bikes" event in East Saint Louis, Illinois.  (Doc. 224 at 8.)

The motorcycle they were riding on was a 1985 Honda Goldwing with tires that were manufactured by Goodyear Dunlop Tires of North America, Ltd. ("Dunlop").  While traveling Northbound on Interstate 55, the rear tire of the motorcycle "suddenly and catastrophically deflated."  (Doc. 218 at 1.)  As a result of the accident, McCloud was permanently and severely disabled.

Plaintiff alleges that the accident was caused by a defectively manufactured rear tire.  Defendants, on the other hand, argue that the reason for the blowout was that the tire had been run overloaded and underinflated for a long period of time.

On June 13, 2007, Defendants filed the Motion currently before the Court in which they allege that Michigan law should apply to the facts of this case.  Plaintiff, in Response, argues that Illinois law should apply.  To that end, there are several additional facts which are integral to the matter at bar.

---

[1] Since the briefs were filed related to this Order, Plaintiff William Booker has dismissed his claims against Defendants and no longer is a party to this case.

Defendants emphasize the following; Booker purchased the
tire and that it was installed at a store in Michigan; At the
time of the accident, both Booker and McCloud were residents of
Michigan (Doc. 218 at 4-5.); And, according to Defendants, "the
evidence shows that Booker used the motorcycle with the subject
tire for two years, primarily in Michigan...." (Doc. 218 at 2.)
However, Defendants do not provide any evidence which would
support their assertion that the motorcycle was primarily used
in Michigan.

Plaintiff, on the other hand, reiterates that the accident
occurred in Illinois and that she and Booker were traveling back
from East Saint Louis, Illinois.  In addition, McCloud states
that St. Francis Medical Center, an Illinois non-profit
corporation, has a lien for $261,902.32 against any recovery she
might have in this action.  (Doc. 224 at 8.)  And finally,
Plaintiff points to evidence that shows that the subject tire
was primarily used in Illinois.  Specifically, Plaintiff points
to Booker's deposition testimony in which Booker discusses the
additional trips that he made on the subject tire.  From there,
McCloud puts together several computations from which she
concludes that 32 percent of the miles accumulated on the
subject tire were accumulated in Illinois, 26 percent were in
Michigan, 19 percent were in Indiana, 8 percent were in Ohio, 6
percent were in Kentucky, 5 percent were in Tennessee, and 4

3

percent were in Alabama.  Defendants do not raise any facts challenging this computational analysis in their Reply Brief (Doc. 229).  As a result, this Court concludes that more miles were placed on the subject tire in Illinois than in any other state.

## II.
## ANALYSIS

Federal courts apply the choice of law rules of the state where the matter was originally filed.  Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941).  The case at bar was filed in the Central District of Illinois, so Illinois' choice of law rules apply.

Illinois follows the "most significant relationship" approach.  Ingersoll v. Klein, 262 N.E.2d 593, 596 (Ill. 1970).  This approach is laid out in the Restatement (Second) of Conflict of Law § 145.  Under this approach there is a presumption that the law of the state where the injury occurred should govern.  Ingersoll, 262 N.E.2d at 595.  That presumption can be overcome if there is another state that has a more significant relationship to the occurrence or the parties.  To determine which state has a more significant relationship, our Appellate Court has paraphrased the two relevant sets of criteria as follows:

> "The first set of criteria includes general
> factors such as the needs of the interstate system;

4

relevant policies of the forum and other interested
states; protection of justified expectations; the
basic policies underlying the particular field of law;
certainty, predictability and uniformity of result;
and ease in the determination and application of the
law to be applied. The second set of criteria includes
the contacts to be taken into account in applying
these principles. These contacts are: (1) the place of
the injury; (2) the place of misconduct; (3) the
domicile, residence, nationality, place of
incorporation and place of business of the parties;
and (4) the place where the relationship between the
parties is centered."

In re Air Crash Disaster Near Chicago, Illinois on May
25, 1979, 644 F.2d 594, 611-12 (7th Cir. 1981).

Furthermore, our appellate court has ruled that the choice
of law determination for each relevant issue is severable.
Specifically, "[t]he application of choice-or-law rules is not a
mechanical process of cranking various factors through a
formula.  Critical to conflicts analysis is the notion that
[courts] must examine the choice-of-law rules not with regard to
various states' interests in general, but precisely, with regard
to each state's interest in the specific question [at bar]."
Id.  As a result, courts are to embrace the doctrine of *depecage*
in which a court separately considers which state's law governs
each substantive issue.  If there are multiple issues which
would be resolved differently under the law of two potentially
interested jurisdictions, then a court must analyze these issues
separately.

5

In the case at bar, both sides agree that Illinois and Michigan law have substantive differences regarding certain issues relevant to this case. Illinois applies strict liability to certain claims for manufacturing defects, See Blue v. Environmental Engineering, Inc., 828 N.E.2d 1128 (2005), while Michigan bases claims for manufacturing defects in negligence. Prentis v. Yale Mfg. Co., 421 Mich. 670 (Mich. 1984).  Illinois recognizes comparative negligence and bars recovery where the plaintiff's negligence is greater than fifty percent, 735 ILCS 5/2-1116, while Michigan has a system of pure comparative negligence so a plaintiff's recovery is diminished by the percentage of the plaintiff's fault.  M.C.L. § 600.2959.  And, Michigan has capped non-economic damages in product liability actions at $500,000 in cases such as this.  M.C.L § 600.2946a.

There is no dispute that there are certain facts in the case at bar which weigh heavily in favor of applying Illinois law.  First, the accident occurred in Illinois.  As already noted, this alone creates a presumption that Illinois law applies.  Secondly, under the Defendant's theory of liability, the accident occurred because the subject tire was overloaded and underinflated.  Since the tire was used in Illinois more

than any other state, under the Defendant's theory of liability, the injury causing conduct occurred primarily in Illinois.[2]

Finally, on the trip in question, Plaintiff was returning from her destination in Illinois.  This is relevant because Defendants repeatedly argue that the injury "fortuitously" occurred in Illinois because Plaintiff was simply passing through the state. (Doc. 218 at 8, <u>citing</u> <u>Schulze v. Illinois Highway Transportation Co.</u>, 423 N.E.2d 278 (3rd Dist. 1981)).  In particular, Defendants repeatedly attempt to equate this case to an airplane accident in which a plane fortuitously crashes in a particular state without any other connections to the situs of the crash.  (Doc. 218, <u>citing</u> <u>In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994</u>, 926 F.Supp. 736, 742–43 (N.D.Ill. 1996)("Roselawn III").  However, the facts do not mirror the parallel that Defendants wish to draw.  At the time of the accident, Plaintiff had specifically traveled to a location in Illinois (the "blessing of the bikes" in East Saint Louis, Illinois), and was on her return journey from East Saint Louis, Illinois when the accident occurred.  It was not a random occurrence that the accident happened in Illinois because the majority of miles over the life of the bike were from roads

---

[2] Under the Plaintiff's theory of liability the injury causing conduct was the faulty manufacturing of the tire in New York. Since no party is arguing for application of New York law, this fact does not weigh in either party's favor and is not relevant to the analysis for choosing between Illinois and Michigan law.

traveled in Illinois.  Furthermore, the majority of the trip in question was spent in Illinois and the destination of the trip was Illinois.  As a result, the fact that the accident occurred in Illinois was not "fortuitous" but was instead a byproduct of the Plaintiff's chosen journeys to and through Illinois.[3]

Together, these facts create a strong presumption that Illinois law should apply.  As a result, under the doctrine of *depacage* Defendant has the burden of pointing to the specific areas of law where Michigan law should govern, and must put forward strong policy considerations for applying Michigan law. In the case at bar, Defendants put forward policy consideration in the areas of 1) liability and 2) damages.[4]  For the following

---

[3] Defendants seem to semantically argue in favor of the word "fortuitous" and state that "regardless of the fact that 32% of the tires total mileage accrued in Illinois, there was still a greater chance that the failure could have happened in the other states where the remaining 68% usage occurred."  Defendants are correct in that any time a random accident occurs in interstate travel its location is technically "fortuitous."  However, in the case at bar, more miles were placed on the tire in Illinois than any other state.  And, Plaintiff was specifically on a trip to Illinois.  As a result, based on the evidence before the Court, the accident and resulting injuries were more likely to occur in Illinois than any other state.

[4] Defendants state that they wish for Michigan's comparative fault law to apply.  However, Defendants do not put forward any policy analysis in their initial brief (Doc. 218) which would assist this Court in concluding that Michigan law should apply to this issue.

reasons Defendants' policy considerations do not overcome the presumption that Illinois law applies.[5]

## 1. Liability

Defendants argue that the relationship between the parties was formed in Michigan.  Specifically, William Booker purchased the motorcycle tires in Michigan.  And, Trish McCloud chose to begin the journey in question on Booker's motorcycle in Michigan.  By getting on the motorcycle in Michigan she formed her trust in the motorcycle and its wheels in Michigan.

Defendants argue that because the relationship was formed in Michigan, and because Plaintiff was a resident of Michigan at the time of the accident, policy concerns favor application of Michigan liability law.

Illinois has adopted the concept of strict liability in products liability cases.  <u>Garrison v. Heublein, Inc.</u>, 673 F.2d 189 (7th Cir. 1982).  In a product liability case, to recover under strict liability, a Plaintiff must show that an injury resulted from a condition of the product, the condition must be unreasonably dangerous, and the condition must have existed at

_____

[5] Plaintiff's primary argument in response is that Defendants' have not filed a timely request for an application of Michigan law.  The Defendant's choice of law determination is not subject to the Court's dispositive motion deadline. Furthermore, Plaintiff does not point to any local rule or other authority which requires that a choice of law motion be filed by a specific time.  Accordingly, the Court will not dispose of Defendants' request as untimely.

the time the product left the manufacturer's control.  30A Ill.
Law and Prac. Products Liability § 3.

Michigan, on the other hand applies negligence law to
products liability claims.  In re Disaster at Detroit
Metropolitan Airport on August 16, 1987, 750 F.Supp. 793, 801
(E.D.Mich. 1989).  According to Defendants, Michigan has adopted
this policy to ensure that the public would not be "deprived of
a product" absent a showing of fault.  Specifically, the
negligence standard "incorporates greater intrinsic fairness in
that the careful safety oriented manufacturer will not bear the
burden of paying for losses caused by the negligent product
seller...."  Prentis, 421 Mich. at 690.

However, in the case at bar, Defendants have not argue that
a "negligent product seller" caused the tire's alleged defects.
(Defendants Amended Answer – Doc. 36.)  Instead, they have
repeatedly argued that the tire ruptured because Booker
overloaded and underinflated the subject tire.  Defendants can
still make this argument because under Illinois law Plaintiff
must show that the tire in question was defective 'at the time
it left Defendants' control.'  If Booker overloaded and
underinflated the tire and this caused the tires' relevant
defects, then the defects did not exist when the tire left
Defendants' control.  In such a case, Plaintiff would be lacking
an essential element to recover under Illinois' strict liability

law.  As a result, the policy considerations regarding a
negligent product seller put forward by Defendants (Doc. 218 at
12) do not apply in this case and certainly do not overcome the
presumption that Illinois law governs.

## 2. Damages

The laws regarding damages in Illinois and Michigan are
vastly different.  Michigan law caps non-economic damages at
$500,000 in cases such as this. Michigan Comp. Laws § 600.2946a
(2003).  Michigan also allows damages to be reduced because of
collateral source payments.  Mich. Comp. Laws § 600.6303(a).
And, Michigan requires a court to reduce both future economic
and non-economic damages to their present cash value.  Mich.
Comp. Laws § 600.6306.  Illinois, on the other hand, does not
have a cap on damages, does not allow for evidence of collateral
source payments, and only requires a court to reduce future
economic damages.

Defendants repeatedly emphasize that Plaintiff was an
Illinois resident at the time of the accident, and that the tire
was sold in Michigan.  Accordingly, Defendants argue that
Michigan law should apply to the issue of damages. Defendants
cite Roselawn III, 926 F.Supp. at 746, which states that

> "[t]he choice of law of the plaintiff's domicile
> is the most sensible solution to conflicts concerning
> compensatory damages.  The reason is that the
> plaintiff's state has the most significant interest in
> the compensation of its domiciliaries.  It is

inconceivable that a plaintiff's state's limits upon compensation can be said to constitute a desire to give its residents less than complete compensation."[6]

In response, Plaintiff focuses on the statutory cap on damages and points to a recent state appellate opinion. Townsend ex rel. Townsend v. Sears, Roebuck and Co., 858 N.E.2d 552 (Ill. App. 1st 2006). In Townsend, an Illinois Appellate Court ruled that a forum state has a compelling policy interest in protecting against legislative encroachment into the judiciaries' right to determine damages. The Illinois Supreme Court has previously ruled that a cap on damages violates the separation of powers clause in Illinois' Constitution because it infringed on the judiciary's right to determine damages. See Best v. Taylor Machine Works, 689 N.E.2d 1057, 1081 (Ill. 1997). According to Townsend, there is a compelling state interest in protecting the rights of the judiciary, and this interest

---

[6] This Court disagrees with the reasoning of the Roselawn III Court. When placing caps on product liability damages a state legislature balances the interest of completely compensating their injured residents against the risk that they could be over compensated by overly sympathetic juries that lack appropriate benchmarks for determining damages. A resident of a state with an overtly strict limit on damages could legitimately disagree with his own legislature and, if impassioned enough, choose to vacation outside of his state and into a forum which placed a greater emphasis on product safety. Or, a severely and permanently injured resident of the overtly strict forum could believe that his legislature has barred him from being complete compensation. This is not to say that Michigan's laws are strict. Instead, it is simply to point out that it is quite 'conceivable' that a plaintiff could persuasively argue that his own state's limits on damages have left him less than 'completely compensated.'

overrides any interest that the foreign state might have in capping non-economic damages. Id. at 912-914. As a result, a court is required to consider that interest when making a choice of law determination. And, all other things being equal, Illinois interest in keeping decisions on damages in the hands of the judiciary overrides any interest that Michigan may have in applying their cap.

As long as Townsend is valid law in Illinois,[7] Illinois law governing caps on damages applies to this case. Furthermore, under the facts before the Court, even without Townsend, Illinois law still governs the issue of damages.

Defendants argue correctly that Michigan has an interest in choosing how well its residents are compensated for their injuries from defective products. However, Illinois also has an interest in any damage award that Plaintiff may receive because Illinois has an interest in making sure that tourists visiting

---

[7] Defendants point out that the Illinois Supreme Court has recently agreed to hear the appeal of Townsend. Townsend v. Sears, Roebuck and Co., 865 N.E.2d 978 (table) (Ill. 2007). However, unless and until the Illinois Supreme Court issues an opinion reversing the decision of the Illinois Appellate Court, the current Townsend opinion provides the best available guidance on how the Illinois Supreme Court would rule on this issue. See Adams v. Fred Weber, Inc., 849 F.2d 1018, 1026 (7th Cir. 1988); McGeshick v. Choucair, 9 F.3d 1229, 1232 (7th Cir. 1993)(noting that a federal court can only diverge from a decision of a state appellate court if a party has presented "good reason" for diverging from the appellate court's decision).

Illinois are adequately compensated for injuries that occur in Illinois.

Here, it is important to emphasize that Plaintiff was not simply passing through Illinois, but was visiting Illinois. Illinois' laws related to damages certainly do not favor the producers of products wishing to limit their liability. Instead, Illinois' product liability laws allow for manufacturers to face higher damages and are thus further discouraged from producing dangerous products.  For example, Illinois law allows for greater liability because it does not provide a cap on damages, it does not allow for evidence of collateral source payments, and it only requires a court to reduce future economic damages.  See Supra.

Illinois has an interest in not only protecting its citizens but also its visitors from faulty products – even if that means providing greater damages (and greater protection) than a visitor might receive in his home state.  See Vlasic v. Wyndham, 451 F.Supp.2d 1005 (C.D.Ill. 2006)(ruling that Aruba law applied to a tourist injured in Aruba and noting that Aruba has an interest in providing a safe environment for tourists). And, that policy interest is still advanced when a visitor is injured on a motorcycle that was purchased in a foreign state

but was ridden into Illinois.[8]  After all, Illinois wants to encourage motorcyclists to visit the state of Illinois, even if they are visiting on motorcycles that are purchased elsewhere.

Illinois' interest in protecting its tourists would not alone be enough to apply Illinois law.  However, it undermines Defendants' policy argument that a plaintiff's home state is the only jurisdiction that has an interest in compensating the victims of a product liability action.  As a result, Defendants' policy considerations regarding damages are not robust enough to overcome the fact that the injury occurred in Illinois, a substantial part of the injury causing activity could likely have occurred in Illinois, and, as a visitor to Illinois, Plaintiff has legitimate contacts with this state.

### III.
### ADDITIONAL ISSUES

Plaintiff has filed a Motion for Leave to File a Supplemental Memorandum in Opposition to Defendants' Motion. [Doc. 230.]  Since the Court has ruled in Plaintiff's Favor, the request for additional briefing is MOOT.

Furthermore, Defendants have filed a Motion to Reconsider [Doc. 222] in which they request that this Court grant summary

---

[8] Defendants in this case cannot argue that they had no reasonable expectation that they would ever be subjected to Illinois law.  They have not put forward any evidence that they have tailored their manufacturing or distribution system to avoid liability in Illinois.  To the contrary, Defendants have approximately 76 motorcycle tire dealers in the state of Illinois.  (Doc. 224 at Ex. G.)

judgment against defendant Goodyear Tire and Rubber Company. Plaintiff has since stipulated to the dismissal of Goodyear Tire and Rubber Company [Doc. 240].  Accordingly, Defendants' Motion to Reconsider is MOOT.

### IV.
### CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for a Choice of Law Determination [Doc. 217] is DENIED.  This Court holds that Illinois law applies to case at bar.

IT IS FURTHER ORDER that Plaintiff's Motion for Leave to File [Doc. 230] and Defendants' Motion to Reconsider [Doc. 222] are MOOT.


ENTERED this  30th  day of July, 2007.


                          s/ Joe Billy McDade_____
                          Joe Billy McDade
                          United States District Judge