**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| TRISH LEE McCLOUD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04-1118 |
| v. ) | |
| ) | |
| GOODYEAR DUNLOP TIRES NORTH ) | |
| AMERICA, LTD., ) | |
| ) | |
| Defendant. ) | |

**O P I N I O N   A N D   O R D E R**

Before the Court is Plaintiff's Motion to Allow Testimony by Video Conference [Doc. 223] filed on June 25, 2007, and Plaintiff's Motion to Allow use of an Exemplar Honda Goldwing Motorcycle [Doc 228] filed on June 29, 2007.  Defendant filed a Response to both Motions [Docs. 236, & 239] on July 16, 2007. In addition, Plaintiff has also filed a Motion requesting additional briefing.  [Doc.242.]  For the following reasons, Plaintiff's Motion to Allow use of an Exemplar Honda Goldwing, Plaintiff's Motion to Allow Testimony by Video Conference, and Plaintiff's Motions for Additional Briefing are DENIED.

**I.**
**BACKGROUND**

This case arises out of a Motorcycle accident that occurred on Interstate 55 in Livingston County, Illinois.  Plaintiff, Trish McCloud was riding on the back of a motorcycle driven by

Plaintiff, William Booker.[1]  Together they were returning to Baldwin, Michigan from a "blessing of the bikes" event in East Saint Louis, Illinois.  (Doc. 224 at 8.)

The motorcycle they were riding on was a 1985 Honda Goldwing with tires that were manufactured by Goodyear Dunlop Tires of North America, Ltd. ("Dunlop").  While traveling Northbound on Interstate 55, the rear tire of the motorcycle "suddenly and catastrophically deflated."  (Doc. 218 at 1.)  As a result of the accident, McCloud was permanently and severely disabled.

Plaintiff alleges that the accident was caused by a defectively manufactured rear tire.  Defendant, on the other hand, argues that the reason for the blowout was that the tire had been run overloaded and underinflated for a long period of time up to and including the time of the accident.

Plaintiff now requests that certain testimony be allowed by videoconference and requests that she be allowed to bring in an exemplar motorcycle to be viewed by the jury.

---

[1] Since the briefs were filed related to this Order, Plaintiff William Booker has dismissed his claims against Defendant and no longer is a party to this case.

## II.
## ANALYSIS

**1. Plaintiff's Motion to Allow Testimony by Video Conference**

Plaintiff wishes to call three potential damage witnesses at trial who each reside outside of this district. Two of the witnesses, Florence Lilly and Erica Harris-Robinson, reside in Michigan in the same community where Plaintiff and her son lived at the time of the wreck. The third potential witness, Dr. Shelly Cook, is a treating physician who practiced in Illinois and treated Plaintiff. Since then, she has moved out of the state to Madison, Wisconsin.

Because of the time and expense involved, Plaintiff requests that these three witnesses should be allowed to testify by videoconference rather than appear in person. Specifically, Plaintiff wishes to avoid the cost of travel and hotel arrangements for these witnesses considering that their anticipated testimony will be brief.

Federal Rule of Evidence 43(a) states that "the court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location."

However the Advisory Committee Notes to Rule 43 recognize the limits on testimony by videoconferencing. Specifically,

> "contemporaneous transmission of testimony from a different location is permitted only on showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. *Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.*" (emphasis added)

Plaintiff wishes the Court to ignore the advisory notes and allow the videoconferencing. Plaintiff cites <u>FTC v. Swedish Match N. Am., Inc.</u>, 197 F.R.D. 1, 2 (D.D.C. 2000) where Magistrate Judge Facciola pointed out his disagreement with the Advisory Committee Notes and stated

> "I am mystified as to why anyone would think that forcing a person to travel across the continent is reasonable when his testimony can be secured by means which are a) equivalent to his presence in court and b) preferable to reading his deposition into evidence. To prefer live testimony by contemporaneous video transmission is to prefer irrationally one means of securing the witness's testimony which is exactly equal to the other.

However, the Seventh Circuit does not appear to share the views expressed by Judge Facciola. The Seventh Circuit has noted that "virtual reality is rarely a substitute for actual presence and even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it." <u>Thornton v. Snyder</u>, 428 F.3d 690, 697 (7th Cir. 2005)(internal citation and quotations omitted). Our Appellate Court's concern with video conferencing springs from

the Court's understanding that "the immediacy of a living person is lost with video technology... and it is to be expected that the ability to observe demeanor, central to the fact-finding process, may be lessened in a particular case by video conferencing." Id. (internal citation and quotations omitted).

Plaintiff points out that even when critical of videoconferencing, our Appellate Court has allowed "contemporaneous video transmissions." See Thornton, 428 F.3d at 697–699. In Thornton, the court allowed a prisoner to participate via videoconferencing. However, the court was not only dealing with the potential inconvenience of bringing witnesses and parties to trial, but also needed to factor in the additional security concerns of transporting a prisoner serving a life sentence who was "moderately aggressive" and "an extremely high escape risk." Id. Such concerns do not exist in this case.

Accordingly, because the Advisory Committee Notes on Rule 43(a) specifically state that "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial," and the only reason for videoconferencing put forward by Plaintiff is inconvenience, this Court will not allow the relevant witnesses noted earlier to testify remotely.

**2. Plaintiff's Motion to Allow use of Exemplar Motorcycle**

Plaintiff requests that this Court allow the use of an exemplar motorcycle at trial. As already noted, Defendant's theory in this case is that Booker drove the subject tire in an overloaded and underinflated condition. Plaintiff anticipates rebutting this theory through expert testimony and through eyewitness observations of the rear subject tire. Specifically, Plaintiff expects to present the exemplar motorcycle in the same overloaded and underinflated condition that Defendant alleges caused the ultimate accident. Plaintiff would then ask relevant witnesses if they observed the subject tire in a similar condition. Presumably, when overloaded and underflated, the exemplar tire on the loaded motorcycle will appear "flat" and the witnesses will testify that they did not observe that the tire on the day of the accident had a similar appearance.

Replica demonstrative evidence is measured by the same relevance and prejudicial tests which are placed upon all evidence. First the evidence must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed. R. Evid. 401. Even if relevant, the evidence can still be prejudicial, if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by the considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

With regard to demonstrative evidence, there are particular dangers that it can be prejudicial. "Since 'seeing is believing,' it is today often felt that this kind of evidence possesses an immediacy and apparent reality which endow it with particularly persuasive effect." 2 McCormick on Evid. § 212 (6th ed.). Furthermore, illustrative evidence is admitted solely to help the witness explain his or her testimony. Illustrative evidence alone has no probative force beyond that which is lent to it by the credibility of the witness whose testimony it is used to explain. Carson v. Polley, 689 F.2d 562, 579 (5th Cir. 1982)(citing 22 Wright & Graham, Fed. Prac. & Pro. § 5174 p. 134 (1978)).

According to Defendant, the exemplar motorcycle that Plaintiff proposes to bring into the courtroom does not have a mud flap or trailer hitch affixed to the rear.[2] A mud flap, in particular, is "a piece of material that is set behind the wheel

---

[2] Defendant cites an "Exhibit D" which is ostensibly a photograph of the motorcycle with the mud flap. However, no such exhibit was attached to Defendant's Response. (Doc. 239 at 5.) However, a photo of the subject tire and the relevant mud flap is available in the Court's record. (Defendant's Motion to Bar Argument/Opinion Based on the Current Shape of the Failed Tire, Doc. 265, Ex. C.) And, a court may take judicial notice of facts which are available in the court record. General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074 (7th Cir. 1997).

of a vehicle and designed to keep dirt, debris, and water from flying up off the road onto the body of the vehicle." Webster's New Millennium™ Dictionary of English, Preview Edition (v 0.9.7), Lexico Publishing Group, LLC. (accessed: July 30, 2007). The position of the mud flap directly behind the tire is extremely relevant to a witnesses' ability to view the tire. Based upon the photo available, the mud flap could have completely obstructed a witnesses' view of the tire. (Doc. 265, Ex. C.)

In fact, according to one of the individuals traveling with Plaintiff on the day of the accident you can not see the rear tire if you are standing next to the motorcycle and you would need to get "on your hands and knees" to see underneath the mud flap. (Doc. 239 at 4, citing depo. of Leroy Knighton at 39.)

Plaintiff could have argued that cross examination could rectify the deficiency in this exhibit.  Specifically, Defendant could easily inquire about the absence of the mud flap on cross examination.  However, the mud flap is so obstructive of a witness's ability to view the rear tire that, in the absence of such an accessory, a jury could not fairly be expected to comprehend on cross examination how significantly a witness's view could have been blocked.[3]

---

[3] Plaintiff, however, may still use photographs of the relevant tire without the mud flap because Defendant may simply respond

Accordingly, without the relevant mud flap attached to the exemplar motorcycle the probative value of the exemplar is minimized and its prejudicial value is greatly enhanced.  As a result, based upon Federal Rule of Evidence 403, Plaintiff may not use the exemplar motorcycle in this trial.

### 3. Additional Briefing

Plaintiff requests additional briefing on the issue of videoconferencing.  Since Plaintiff does not raise any new issues or concerns, additional briefing is not necessary.  (Doc. 241.)  Accordingly, Plaintiff's Motion is DENIED.

### III.
### Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion to Allow use of an Exemplar Honda Goldwing (Doc. 228), Plaintiff's Motion to Allow Testimony by Video Conference (Doc. 223), and Plaintiff's Motions for Additional Briefing (Doc. 242) are DENIED.

ENTERED this  30th  day of July, 2007.

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge

---

on cross examination with similar photographs with the mud flap. It is altogether a different matter to expect Defendant to respond in kind by wheeling a separate motorcycle with a mud flap attached into the courtroom.