**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| TRISH LEE MCCLOUD,        )<br>                           )<br>    Plaintiff,             )<br>                           )<br>v.                         )    No. 04-1118<br>                           )<br>GOODYEAR DUNLOP TIRES NORTH)<br>AMERICA, Ltd.,             )<br>                           )<br>    Defendant.             ) | |

### O P I N I O N   A N D   O R D E R

Before the Court is Plaintiff's Motion for Sanctions (Doc. 364) filed on August 17, 2007.  Defendant filed a Response (Doc. 366) to the Motion on August 19, 2007.  Included in the Response is an additional Motion for a Curative Instruction.  Also before the Court is a second Motion for a Curative Instruction (Doc. 369) filed by Defendant on August 21, 2007.  All of these motions were filed after the second week of a three week trial. For the following reasons, Plaintiff's Motion is GRANTED, and Defendant's Motions are DENIED.

### I.
### BACKGROUND

Plaintiff has brought her Motion seeking sanctions during a trial involving a tire blowout on a motorcycle.  Plaintiff has brought suit against the tire manufacturer.

Plaintiff believes that the testimony elicited at trial demonstrates that Defendant provided untruthful responses to

interrogatories during discovery. These untruthful responses hid the identity of the individual who inspected the subject tire that was involved in the blowout.

At trial, Defendant's corporate representative, Tom Rolls, testified that each tire inspector is assigned an inspector identification number. After each tire is inspected, the inspector stamps his number onto the tire. While this number can wear off, if a number is visible, the number can be used to trace who inspected the tire.

Plaintiff argues that they were told in interrogatories by Defendant that there was no way to locate or identify the individual who inspected the subject tire in this case. Plaintiff states that if they had known about the identification numbers before trial, they would have made an effort to discern the number on the subject tire and would have sought to depose the actual inspector and presented his testimony at trial.

On May 18, 2005, in Plaintiff's First Set of Interrogatories, Plaintiff made the following inquiry at interrogatory number three:

> Please identify and describe the testing to which the subject tire, and or each of its component parts, was put. Please also state whether the subject tire was inspected by any employee by defendant Dunlop subsequent to its manufacture, and if so, identify the employee and describe the inspection. (Doc. 365 at Ex. C, p. 4.)

Defendant provided a lengthy response complete with objections.  The complete response is as follows:

> DUNLOP incorporates its general objections to the definition of "subject tire" set forth in the "Definitions and Instructions" accompanying plaintiff's interrogatories.  In addition, DUNLOP objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence.  DUNLOP further objects to this request on the grounds that it seeks confidential trade secret information and/or other proprietary information whose disclosure would cause DUNLOP irreparable competitive harm.
> Without waiving its objections, and subject to DUNLOP's definition of "subject tire" as a Dunlop Qualifier K627B 150/90B15M/C74H tire bearing DOT No. DAWVM711200, DUNLOP states that every cured tire is thoroughly inspected by a trained inspector. *DUNLOP has not been able to identify the inspector of the subject tire.* (emphasis added)
> Further, Dunlop refers plaintiff to the testing standards and compliance test results pertaining to Standard No. 119 of the Federal Motor Vehicle Safety Standards. DUNLOP will produce these materials following the entry of a suitable protective order intended to safeguard their confidentiality.  (Doc. 364, Ex. D at 5.)

On December 30, Plaintiff submitted a Second Set of Interrogatories.  At interrogatory twenty-five, Plaintiff made the following request:

> Please identify by name, address and telephone number each and every motorcycle tire tire [sic] inspector that worked for defendant Goodyear Dunlop Tires North America, Ltd., during the 12th and 13th weeks of 2000 at the plant where the subject tire was manufactured and state the date each was hired, describe the training each received and state whether or not they are currently employed by any defendant to this lawsuit. (Doc. 364, Ex F. at 5.)

3

Defendant in turn made the following response:

> DUNLOP objects to this interrogatory on the grounds that it is unduly burdensome, is grossly overly broad, and seeks information that is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to relevant or admissible evidence, specifically but not limited to its request for information regarding employees not involved in the inspection of the subject tire.
> Without waiving its objection, DUNLOP responds as follow: [sic] Based upon the date of manufacture, there are at least 15 potential inspectors who may have inspected the tire at issue. *Defendant is unable to identify the specific individual who participated in the inspection of the subject tire.* At the time of the manufacture of the subject tire, inspectors at DUNLOP were responsible for the inspection of all motorcycle, passenger and light truck tires. Therefore, *there is no way to isolate who inspected the subject tire or any tires from the subject tire line.* However, in the spirit of cooperation defendant identifies Mr. Thomas Bushen as one of the 15 inspectors who may have inspected the subject tire. Mr. Thomas Bushen may be contacted through counsel. (emphasis added)(Doc. 364, Ex F. at 5.)

Believing that Mr. Bushen was selected by Defendant because of either his favorable relationship with Defendant or the fact that he had been prepped for deposition, Plaintiff chose not to depose Mr. Bushen because they believed that he was not the actual individual who had inspected the subject tire.

However, Plaintiff did make further inquiries seeking to discover the name of the actual individual who inspected the subject tire at the deposition of Hubert Thompson. At the deposition, Plaintiff's counsel made clear that he was "trying to identify the person that would have inspected the motorcycle

4

tire...." (Doc. 364 Ex. D at 2.) Upon reading the deposition, it is clear that Plaintiff's counsel was under the false impression that the only way to deduce who inspected the subject tire was to narrow down the time frame when the tire was produced. Despite the fact that Plaintiff's counsel was under that false impression because of the misleading statements by Defendant, neither Defendant's counsel nor the witness corrected the misperception, despite the fact that there was a system in place to figure out who inspected the subject tire. Instead, the witness simply stated that there was no way to narrow down the time frame.

At trial, Mr. Rolls was placed on the stand and testified about the inspector stamp system. According to Rolls, each tire inspector receives a number and the inspectors stamp their number onto each tire after inspecting the tire.

Plaintiff's counsel responded on cross examination by inquiring if there was an inspector's stamp on the subject tire. Mr. Rolls noted that the number, stamped in ink, can wear off over time, but conceded that the subject tire did not have an inspector's stamp on it. From Plaintiff's perspective at the time, the fact that the tire lacked a stamp fit with their case. Specifically, it supported their theory that the subject tire was a "check tire" or "scrap tire" and was never inspected.

At a break in the trial, Plaintiff's counsel looked more carefully at the subject tire and removed a deposition exhibit sticker that had been placed on the tire. Underneath one of those stickers was faint writing that appears to be the inspector's number. After the break, Plaintiff brought this to the Court's attention and has followed up with its current Motion.

Defendant responded with their Motion in which they argue that the jury was misled by the cross examination of Mr. Rolls. Specifically, they wish the Court to point out that the inspection number was later discovered on the side of the tire. This would remove the impression with the jury that the subject tire lacked an inspection number and was never inspected.

In addition, Defendant argues that their interrogatory answers were not misleading. Defendant emphasizes that the numbers on the tire are illegible and supposedly have been illegible ever since the accident.

Defendant also point's out that they produced the work instructions of a tire inspector at defendant's factory. Buried within discovery documents provided by Defendant is a list of inspector work instructions. Included within those instructions are steps "3.0.7" and "3.0.8" for when a tire inspector has completed his inspection. They provide that a tire inspector is to "place [the] inspector identification number on [the]

6

sidewall of all 'OK' tires" and next "place [the] inspector identification number on [the] tread of [the] tire sent to [the] classifier."  At argument, Defendant pointed out that they disclosed the Motorcycle Visual and X-Ray Standards.  On page eighty-six of this hundred page document, there is a mention that each tire is to have placed on its side an inspector's identification number.

## II.
## DEFNDANT'S MOTION FOR AN INSTRUCTION

Defendant requests a curative jury instruction because they feel that the jury may have been misled by the cross examination of Mr. Rolls.  Specifically, Defendant feels that the jury may have been misled by the questions when Plaintiff's Counsel got Mr. Rolls to admit that the subject tire does not have a number stamp on it.

At trial, Defendant was given an opportunity to recall Mr. Rolls and correct the error and inform the jury that the subject tire does indeed have an inspector's identification number stamped on its side.  Accordingly, a corrective instruction is no longer needed, and Defendant's Motions are DENIED.

## III.
## PLAINTIFF'S MOTION FOR AN INSTRUCTION

Plaintiff's Motion points to a much more serious issue. Defendant's interrogatory answers were at best misleading and at worst deliberately deceptive.

Defendant specifically stated in their interrogatory answer that "... there is no way to isolate who inspected the subject tire or any tires from the subject tire line." (Doc. 364 Ex. F at 5.) At best, Defendant was aware that inspector's number was illegible at the time they gave that answer. Rather than provide the whole truth and inform Plaintiff of the inspector stamp system, Defendants gave less than the whole truth and simply stated that there was no way to isolate who inspected the tire.

If that is the case, Defendant's intentionally deprived Plaintiff of an opportunity to forensically investigate and decipher the number for themselves. At the very least, they should have had an opportunity to determine for themselves if the number was illegible. Given the amount of resources Plaintiff has devoted to this case, the Court believes that Plaintiff would have made every effort to magnify and analyze the now illegible numbers on the tire if they had known of the number's significance.[1]

---

[1] In Defendant's brief, Defendant emphasizes that the numbers appear illegible on the tire and have been illegible throughout discovery. Defendant emphasizes that Plaintiff did not depose the one tire expert that was made available. These facts are irrelevant. What matters is that Plaintiff was denied the information that would have given them an opportunity to discover a relevant witness. When Plaintiff was told "...there is no way to isolate who inspected the subject tire...." Plaintiff took Defendant's statement as true. The burden can

8

At worst, Defendant's answer that "... there is no way to isolate who inspected the subject tire...." is deliberately deceptive. The answer could well be an attempt by Defendant to hide the identity of a witness who could have provided damning testimony against Defendant.

Indeed, it is possible that the tire inspector could have testified that he was under pressure by his supervisors to inspect more units than he could safely inspect in a shift. While the inspector's testimony might not have been that damning, it is highly unlikely that the inspector's testimony would have favored Defendant. After all, Defendant would not have failed to mention the inspector numbering system in the interrogatory if disclosing that system could have identified a favorable witness. Furthermore, after creating the false impression that the only way to discover the tire inspector's identity was to narrow down the time that the tire was produced, Defendant did nothing to correct this false impression at Mr. Thompson's deposition. If a tire inspector might have provided testimony that would have benefited Defendant, then Defendant would have corrected Plaintiff's false impression and shown them the means for possibly discovering the tire inspector's identity.

---

not be placed upon Plaintiff to conduct lengthy discovery to test the veracity of every response to every interrogatory.

Defendant argues that they should not be sanctioned because their answer was unresponsive to Plaintiff's question. The fact that Defendant's answer was unresponsive makes their deception all the more egregious. In the interrogatory in question, Plaintiff asked for the names of all fifteen inspectors who could have inspected the subject tire. Defendant objected and then told Plaintiff that there was no way to isolate who inspected the subject tire. If Defendant had simply objected, Plaintiff could have filed a motion to compel and the Court would have resolved the issue. Instead, Defendant volunteered misleading information that deceived Plaintiff into believing that no motion to compel was necessary. What incentive would Defendant have to volunteer non-responsive false information other than to mislead Plaintiff?

Finally, Defendant points out that within disclosed documents were records which talked about an inspection number stamp being placed on tires as they were inspected. First, none of these documents point out that there was a number ink stamped on the tire (instead of a sticker placed on the tire) that could be used to identify the inspector of a tire. More importantly, neither of these disclosed documents abate the deception done by Defendants previous misleading statement.

Accordingly, this Court has found that Defendant's answer was at best deliberately misleading and at worst a deliberate

attempt to hide the identity of a damning witness.  Either way, Defendant's answer is subject to sanctions under Federal Rule of Civil Procedure 37(c)(1).

The real question before the Court is what sort of relief is appropriate.[2]

Under the applicable law, this Court may provide a curative instruction.  See Fed.R.Civ.P. 37(c)(1)(B).  Illinois' pattern jury instructions provide for an instruction when a trial court determines that in all likelihood a party would have produced evidence under the existing facts and circumstances except for the fact that the evidence would be unfavorable.  Ill. Pattern Jury Instr.-Civ. 5.01, Notes on Use.

The Illinois Pattern Instruction (applied to witnesses instead of documents) states that:

> If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:
>
> 1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.
> 2. The witness was not equally available to an adverse party.
> 3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

---

[2] Plaintiff has not requested a mistrial on this issue and has not asked that the case be returned to discovery.

    4.      No reasonable excuse for the failure has been shown.

Plaintiff seeks relief in the form of a civil contempt proceeding and a harsh curative instruction to the jury. Specifically, Plaintiff would like the following instruction read to the jury:

> Ladies and Gentlemen of the Jury, the Court has determined that Defendant, Goodyear Dunlop Tires North America, Ltd. falsely stated to Plaintiff under oath that there was no way to determine who inspected the subject Dunlop Qualifier tire. Because of that false statement, you are instructed that had the tire inspector been identified, his or her testimony would have been adverse to Defendant Goodyear Dunlop Tires North America, Ltd. in this case.

It is important to note that under the Illinois Pattern instruction a jury "may infer" that the testimony of the witness would have been adverse, while under Plaintiff's proposed corrective instruction, the jury would be told that the testimony "would have been" adverse. As a result, Plaintiff's proposed instruction, in its present form, goes too far and does not give the jury the necessary opportunity to choose whether or not to draw a negative inference. See Halvorsen v. Lettuce Entertain You Enterprises, Inc., 2004 WL 542526 (N.D. Ill. March 18, 2004)(changing a parties proposed 5.01 instruction from the jury "should" draw an adverse inference to the jury "may" draw an adverse inference.).

When appropriate, our Appellate Court has instructed district courts to apply Illinois Pattern Instruction 5.01 when a party has failed in discovery to produce a piece of evidence that might have been the "smoking gun" which a plaintiff needed. See Heinemeier v. Chemetco, Inc., 246 F.3d 1078 (7th Cir. 2001).

However, the Illinois pattern instruction does not exactly apply in this case.  Defendant has not "failed to produce" a witness, but instead has either denied Plaintiff an opportunity to attempt to discover the identity of a witness or deliberately misled Plaintiff to keep a witness hidden.  Accordingly, the instruction will need to be modified for purposes of this trial.

The Seventh Circuit has been amenable to modifying this instruction.  Specifically, our Appellate Court has stated on more than one occasion that the first two elements of a 5.01 instruction (that the witness was "under the control of the [Defendant]" and was "not available" are not necessary.  Doe By and Through G.S. v. Johnson, 52 F.3d 1448 (7th Cir. 1995); Berry v. Deloney, 28 F.3d 604, 609 (7th Cir. 1994); Niehus v. Liberio, 973 F.2d 526, 530-31 (7th Cir. 1992)(noting that there may not be a need for the first two elements of a 5.01 instruction.).

Accordingly the Court will remove those two elements that would only confuse the issue and give the following modified instruction to the jury.

> If a party to this case has prevented the opposing party from discovering the identity of a witness you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:
>
> 1. A reasonably prudent person under the same or similar circumstances would not have hid the identity of the witness if he believed the testimony would be favorable to him
>
> 2. No reasonable excuse for the failure has been shown.

Furthermore, Plaintiff was given an opportunity at trial to cross examine Mr. Rolls for a second time after Defendant recalled him. On the stand, Plaintiff was given an opportunity to inquire regarding the interrogatory answers. Mr. Rolls was given a chance to provide his excuse that the tire inspector number was illegible on the subject tire. The jury will then be left with what inferences to draw.

In summation, through this pattern instruction, the jury is free to draw whatever inferences they feel are appropriate. Unlike in Plaintiff's proposed instruction, the jury is not required to draw a negative inference. They are still given the appropriate opportunity to draw a negative inference from the fact that a potentially integral fact witness may have been hidden from trial.

Finally, the Court notes that this instruction is an extremely harsh sanction and satisfies the need for a civil sanction.

## IV.
## CONCLUSION

IT IS THERFORE ORDERED that Plaintiff's Motion (Doc. 364) is GRANTED.  Defendant's Motions (Doc. 366 and 369) are DENIED. The aforementioned corrective instructions will be given.


ENTERED this  23rd  day of August, 2007.

 s/ Joe Billy McDade
Joe Billy McDade
United States District Judge
