UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Trish Lee McCloud,<br>　　　　　　　　Plaintiff<br><br>　v.<br><br>Goodyear Dunlop Tires, et al<br>　　　　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-1118 |

**ORDER**

Now before the Court is a Petition by OSF Healthcare Systems to adjudicate liens in this case. The matter is fully briefed.

Petitioner OSF Healthcare System d/b/a Saint Francis Medical Center (herein, "OSF") provided medical goods and services to Trish Lee McCloud between May 26 and July 25, 2002, for injuries she sustained in a motorcycle accident. That motorcycle accident is the subject of this litigation. The billed amount for those goods and services was $261,902.33. When this lawsuit was filed, OSF served a lien against the injury claim for that amount.

Trish McCloud's claim was tried to a jury, which rendered a Verdict in her favor, awarding damages in the amount of $15,000,000.14. That Verdict was itemized; the amount awarded for payment of past medical care, treatment, services and life care needs was $472,794.14. (See Verdict, Doc. #378). That amount, which included the OSF bills, was presented by the Plaintiff as part of stipulated medical expenses, the reasonableness of which was undisputed at trial.

The Verdict was appealed, and on appeal the parties participated in the Seventh Circuit's settlement process. The case was settled for a confidential amount. The settlement was approved by the Court on December 10, 2008. The approval included attorney's fees of 40% of the settlement amount plus expenses, which totaled $551,811.73.

After the settlement fund was established and paid, Plaintiff's lawyers and OSF lawyers began negotiations over satisfaction of the lien. They have been unsuccessful in resolving their differences. OSF maintains that it is entitled to the entire amount of its lien, while Plaintiff contends that the settlement amount is subject to the common fund doctrine[1] and should accordingly be reduced by 40% for attorney fees and by pro-rata litigation expenses.

OSF seeks adjudication of its lien pursuant to the Healthcare Services Lien Act[2], 770 ILCS 23/30, which provides in pertinent part:

> § 30. Adjudication of rights. On petition filed by the injured person or the health care professional or health care provider and on the petitioner's written notice to all interested adverse parties, the circuit court shall adjudicate the rights of all interested parties and enforce their liens.

Under this Act, so long as the total amount of liens is less than 40% of the verdict or settlement, the lien is enforceable. 770 ILCS 23/10(c). There is no dispute between Plaintiff and OSF that the amount of liens is less than 40% of the settlement. What is not clear, however, is whether the lien is subject to the common fund doctrine.

The question whether the common fund doctrine applies to liens of medical providers was mentioned in Baier v. State Farm Ins. Co., 361 N.E.2d 1100 (Ill.1977). In that case, the plaintiff was an attorney who had represented a plaintiff in an automobile accident case. His client's insurer had paid his client $1000, which was the policy limit for medical bills. To obtain that amount, his client

---

[1] In an Order entered earlier in this case (See Order, Doc. #469), a motion to compel was denied. In that Order, the Court found specifically that Plaintiff would not be allowed to challenge the jury's finding that Plaintiff's medical bills, including those from OSF, were reasonable and customary, either directly or indirectly. Plaintiff's indirect challenges were based on what an insured patient would have paid and what Medicaid would have paid. In the briefing regarding adjudication of the OSF lien, these issues were again raised; they are again rejected.

[2] This case is in federal court on diversity jurisdiction, so Illinois law governing liens applies to this dispute.

had signed a document reflecting that the payment was a "loan" to be repaid only "in the event and to the extent that any net recovery is made" from a tortfeasor. The document also required the insured to sue if there was a basis for doing so. Suit was filed and the insurer notified the other driver's insurer that it claimed $1000 subrogation rights from any proceeds in the case.

The attorney obtained a settlement of $12,000. The other driver's insurer paid in 2 drafts: one for $11,000 payable to the attorney and his client and one for $1000 payable to the insurer for $1000. In the course of deciding whether the common fund doctrine applied to the subrogor/subrogee relationship (the Supreme Court held that it did), the Baier Court noted that the insurer had hypothesized that if the doctrine applied to the subrogor/ subrogee relationship, then it might also apply to a medical provider who had rendered medical services. Because the case before it did not present that question, the Court declined to consider it. 361 N.E.2d at 1102. In reaching its decision, the Baier Court commented that the common fund doctrine is based on the "equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." 361 N.E.2d at 1102.

Shortly after Baier was decided, the issue of whether the common fund doctrine applies to hospital liens presented itself squarely. In Maynard v. Parker, 387 N.E.2d 298 (Ill.1979), the plaintiff sued for injuries sustained in a car accident. His damages included $11,027.96 for his hospital bill. Under the then-extant hospital liens act, the hospital noticed its lien. The case settled for $37,500. Defendant's insurer issued a draft for $11,027.96 to the Plaintiff, his wife, his attorney and the hospital. The hospital then filed its petition to adjudicate the rights of the parties to that amount. The trial court ordered that the hospital pay from the total amount one-third of the costs incurred ($205.48) and one-third of the total for attorney's fees. The hospital appealed, and the appellate court reversed.

Before the Supreme Court, the plaintiff argued that the trial court had properly applied the common fund doctrine. The Supreme Court rejected that argument, finding two "important distinctions" between the case before it and Baier. First, the types of relationships between the parties in Baier differed significantly: "Here, the plaintiff's liability to the hospital was not dependent upon the creation of a fund; plaintiff was a debtor obligated to pay for the services rendered by the hospital out of any resources which might become available to him." Id. at 300. Unlike Baier, where the subrogor and subrogee stood in the same shoes, the Plaintiff and the hospital had entirely separate legal interests and obligations. Second, there was no limitation on the amount of the lien that could be claimed in Baier, whereas the amount of the lien in Maynard could not, pursuant to the Lien Act, "exceed one-third of the sum paid or due to said injured person..." Id, quoting Ill. Rev. Stat.1975, ch. 82 ¶ 97. Because of these two distinctions, the Court concluded that the common fund doctrine was not applicable to hospital liens.

The common fund doctrine again reached the State Supreme Court in Bishop v. Burgard, 764 N.E.2d 24 (Ill.2002). In that case, an employee sued the driver of the other vehicle involved in a car accident that had injured the employee. She signed a contingency agreement with her attorney. The employee's medical bills, totaling $8,576.30, had been paid by the employer's medical plan, which had noticed its lien in that amount against the proceeds of the lawsuit. The case settled for $21,500. Plaintiff's attorney was unsuccessful in efforts to have the Plan reduce its lien by one-third to reflect attorney's fees, so he filed a petition to adjudicate the lien. The issues presented included whether ERISA preempted the doctrine in this context and, if not, whether the doctrine applied or whether the terms of the plan prevailed. In addition, if the terms of the plan prevailed, there remained the question whether the terms of the plan were unenforceable as a violation of public policy.

The Bishop Court relied on Ragan v. Columbia Mutual Ins. Co., 701 N.E.2d 493 (1998), which

had held that ERISA does not preempt the common fund doctrine. Finding nothing in the case before it that would call Scholtens into question either substantively or on the facts, the Court applied Scholtens. The Court emphasized that ERISA does not preempt the doctrine because the claim for attorney's fees arises independently of both the benefit plan and the subrogation agreement. Bishop, 764 N.E.2d at 31. See Mackey v. Lanier Collection Agency & Svc. Inc., 486 U.S. 825, 833 n.8 (1988)(noting in dicta that common fund claims for attorney's fees are not preempted by ERISA). Furthermore, because of its independent nature, a common fund claim for attorney's fees is not governed by the terms of the plan. Bishop, 764 N.E.2d at 34.

A few months ago, the Illinois Court of Appeals for the Fifth District decided Howell v. Dunaway, 924 N.E.2d 1190 (Ill.App.2010). The Howell Court found that, in Bishop, the Supreme Court had expanded the common fund doctrine from its expression in Maynard, shifting the focus from the relationship between the parties to the "real question" of "whether the claimant had benefitted from the lawsuit without contributing to its costs, thereby becoming unjustly enriched." Id. at 1195. The Howell Court pointed out that the relationship between a plaintiff and a hospital/lienholder is much more like a subrogor/subrogee relationship "than the court in Maynard recognized." Id..

With all due respect to the Howell Court, the Supreme Court of Illinois has spoken, clearly and unambiguously: the common fund doctrine does not apply to hospital liens. Moreover, I do not believe that the Supreme Court will adopt the reasoning used by the Fifth Circuit in Howell. The "shift in focus" noted by the Howell Court is not nearly as pervasive as that Court would have it. In Bishop, the Supreme Court emphasized the centrality of the nature of the relationship between the parties, emphasizing that the quasi-contractual right to payment of fees was independent of and irrelevant to the contractual relationship between the health care plan and the beneficiary. 764 N.E.2d at 31. It was only in the context of those relationships that the Court reached its decision that ERISA did not

preempt the common fund doctrine as it applies to attorney's fees claims. <u>Bishop</u> demonstrates with some force that the nature of the relationship between the parties remains crucial in deciding whether the common fund doctrine applies. There is nothing in that opinion to suggest that a reconsideration of <u>Maynard</u> is forthcoming.

Other than the <u>Howell</u> challenge to the lien, Plaintiff has raised no other significant issue. I conclude that <u>Maynard</u> applies, and under <u>Maynard</u>, the lien asserted by OSF is not subject to the common fund doctrine.

The OSF lien is therefore to be paid in full. The Petition by OSF is allowed.

ENTERED ON July 13, 2010

                              s/ John A. Gorman

                              JOHN A. GORMAN
                    UNITED STATES MAGISTRATE JUDGE